## SCHLESINGER, SECRETARY OF DEFENSE, ET AL. *v.* RESERVISTS COMMITTEE TO STOP THE WAR ET AL.

No. 72–1188.   Argued January 14, 1974—Decided June 25, 1974

*Solicitor General Bork* argued the cause for petitioners. With him on the brief were *Acting Assistant Attorney General Jaffe, Deputy Solicitor General Friedman, Leonard Schaitman,* and *William D. Appler.*

*William A. Dobrovir* argued the cause and filed a brief for respondents.\*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari, *sub nom. Richardson* v. *Reservists Committee to Stop the War,* 411 U. S. 947 (1973), to review the judgment of the Court of Appeals affirming, without opinion, the District Court's partial summary judgment for respondents declaring that "Article I, Section 6, Clause 2 of the Constitution renders a member of Congress ineligible to hold a commission in the Armed Forces Reserve during his continuance in office." *Reservists Committee to Stop the War* v. *Laird,* 323 F. Supp. 833, 843 (DC 1971). We hold that respondents do not have standing to sue as citizens or taxpayers. The judgment of the Court of Appeals is therefore reversed.

I

Article I, § 6, cl. 2, of the Federal Constitution provides:

"No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments

---

\**Thomas H. King, Maurice F. Biddle,* and *Harold Shapiro* filed a brief for the Reserve Officers Association of the United States as *amicus curiae.*

whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."

The Constitution thereby makes Members of Congress ineligible for appointment to certain offices through the limitation of the Ineligibility Clause, and prohibits Members of Congress from holding other offices through the latter limitation, the Incompatibility Clause.

Respondents, the Reservists Committee to Stop the War and certain named members thereof,[1] challenged the Reserve membership of Members of Congress[2] as being

---

[1] The Committee, located in California, is a national unincorporated association of present and former officers and enlisted members of the Reserves, organized for the purpose of opposing the military involvement of the United States in Vietnam and of using all lawful means to end that involvement, including efforts by its members individually to take all steps necessary and appropriate to end that involvement. The five individual respondents were all members of the Committee, residents of California, and United States citizens and taxpayers. At the time suit was filed, four of the individuals were in active Ready Reserve status; the status of the fifth, then the Committee cochairman, was unspecified.

[2] At the time suit was filed, 130 Members of the 91st Congress were also members of the Reserves, which are divided into Ready, Standby, and Retired components. By the end of the 92d Congress, 119 Members were reservists. As of November 2, 1973, the 93d Congress has seen the number of its reservists reduced to 107, all but one of whom are commissioned officers, App. 5, and none of whom can occupy the Ready Reserve status of the individual respondents, *supra*, n. 1. Dept. of Defense Directive 1200.7 § v, c. 2 (July 2, 1970); 32 CFR § 125.4 (c)(2). Of the 107, 20 (including the one enlisted man) are in the active, and 12 in the inactive, Standby Reserve; and 73 are in the Retired Reserve, 16 of whom receive retirement pay. Two other Members are in the Army National Guard, and thus in the Ready Reserve, 10 U. S. C. § 269 (b), but since the governors of the various States control appointments to offices in the Guard, petitioners could not provide

in violation of the Incompatibility Clause. They commenced a class action in the District Court against petitioners, the Secretary of Defense and the three Service Secretaries, seeking (1) an order in the nature of mandamus directed to petitioners requiring them to strike from the rolls of the Reserves all Members of Congress presently thereon, to discharge any member of the Reserves who subsequently became a Member of Congress, and to seek to reclaim from Members and former Members of Congress any Reserve pay said Members received while serving as Members of Congress, (2) a permanent injunction preventing petitioners from placing on the rolls of the Reserves any Member of Congress while serving in Congress, and (3) a declaration that membership in the Reserves is an office under the United States prohibited to Members of Congress by Art. I, § 6, cl. 2, and incompatible with membership in the Congress.

Respondents sought the above relief on behalf of four classes of persons. The Committee and the individual respondents sought to represent the interests of (1) all persons opposed to United States military involvement in Vietnam and purporting to use lawful means, including communication with and persuasion of Members of Congress, to end that involvement. The individual respondents alone sought to represent the interests of (2) all officers and enlisted members of the Reserves who were not Members of Congress, (3) all taxpayers of the United States, and (4) all citizens of the United States. The interests of these four classes were alleged to be adversely affected by the Reserve membership of Members of Congress in various ways.

---

relief regarding such reservists. The judgment of the District Court did not therefore extend to this category of reservist. 323 F. Supp. 833, 838 n. 3 (DC 1971).

As relevant here, citizens and taxpayers were alleged in respondents' complaint to have suffered injury because Members of Congress holding a Reserve position in the Executive Branch were said to be subject to the possibility of undue influence by the Executive Branch,[3] in violation of the concept of the independence of Congress implicit in Art. I of the Constitution. Reserve membership was also said to place upon Members of Congress possible inconsistent obligations which might cause them to violate their duty faithfully to perform as reservists or as Members of Congress. Reserve membership by Members of Congress thus, according to respondents' complaint,

> "deprives or may deprive the individual named plaintiffs and all other citizens and taxpayers of the United States of the faithful discharge by members of Congress who are members of the Reserves of their duties as members of Congress, to which all citizens and taxpayers are entitled." Pet. for Cert. 46.

Petitioners filed a motion to dismiss respondents' complaint on the ground that respondents lacked standing to bring the action, and because the complaint failed to state a cause of action upon which relief could be granted. The latter ground was based upon the contention that the Incompatibility Clause sets forth a qualification for Membership in the Congress, U. S. Const., Art. I, § 5, cl. 1, not a qualification for a position in the Executive Branch. The power to judge that qualification was as-

---

[3] Respondents appear to have had reference in part to pressure that conceivably could be applied to reservist Members of Congress through such offices as the President's power to call reservists to active duty without their consent, 10 U. S. C. §§ 672–675, or his power to discharge commissioned reservists, who serve only at his pleasure. 10 U. S. C. § 593.

serted to rest exclusively with Congress, not the courts, under *Powell* v. *McCormack,* 395 U. S. 486, 550 (1969).

The District Court concluded that it first had to determine whether respondents had standing to bring the action and, without citation to authority, stated:

> "In recent years the Supreme Court has greatly expanded the concept of standing and in this Circuit the concept has now been almost completely abandoned." 323 F. Supp., at 839.

The court then held that of the four classes respondents sought to represent, "[o]nly their status as citizens" gave them standing to sue in this case. *Id.,* at 840. The District Court denied standing to respondents as reservists, as opponents of our Vietnam involvement, and as taxpayers. The court acknowledged that there were very few instances in which the assertion of "merely the undifferentiated interest of citizens," *ibid.,* would be sufficient, but was persuaded to find that interest sufficient here by several considerations it found present in the nature of the dispute before it and by the asserted abandonment of standing limitations by the Court of Appeals, whose decisions were binding on the District Court.

In response to petitioners' contention that the Incompatibility Clause sets forth a qualification only for Membership in the Congress, which Congress alone might judge, the District Court characterized the issue as whether respondents presented a nonjusticiable "political question," resolution of which by the text of the Constitution was committed to the Congress under *Baker* v. *Carr,* 369 U. S. 186, 217 (1962). The court held that the failure of the Executive Branch to remove reservist Members of Congress from their Reserve positions was justiciable.

Having resolved the issues of standing and political question in favor of respondents, the District Court held on the merits that a commission in the Reserves is an "Office under the United States" within the meaning of the Incompatibility Clause. On the basis of the foregoing, the court in its final order granted partial summary judgment for respondents by declaring that the Incompatibility Clause renders a Member of Congress ineligible, during his continuance in office, to hold a Reserve "commission"; the court denied such parts of respondents' motion for summary judgment which sought a permanent injunction and relief in the nature of mandamus.[4] 323 F. Supp., at 843.

The Court of Appeals affirmed the judgment of the District Court in an unpublished opinion "on the basis of the memorandum opinion of the District Court." The Court of Appeals added that it was "also of the view that [respondents] have the requisite standing and that their claim is judicially enforceable under the rationale of" *Flast* v. *Cohen*, 392 U. S. 83 (1968), and *Baker* v. *Carr*, *supra*. Petitioners present three questions for review: (1) whether respondents have standing, "either as citizens or as federal taxpayers," to bring this claim, (2) whether respondents' claim presents a "political question" not subject to judicial review, and (3) whether "membership" in the Reserves constitutes an "Office under the United States" within the meaning of the Incompatibility Clause. Pet. for Cert. 2.

---

[4] Respondents did not, in the Court of Appeals, or by cross-petition here challenge the District Court's denial of injunctive and mandamus relief. In light of the ground for our disposition of the case, we need not and do not address ourselves to the validity or scope of the District Court's ruling on the merits of respondents' claim, or the relief it granted.

## II

### A

In *Flast* v. *Cohen, supra,* at 95, the Court noted that the concept of justiciability, which expresses the jurisdictional limitations imposed upon federal courts by the "case or controversy" requirement of Art. III, embodies both the standing and political question doctrines upon which petitioners in part rely. Each of these doctrines poses a distinct and separate limitation, *Powell* v. *McCormack,* 395 U. S., at 512; *Baker* v. *Carr, supra,* at 198, so that either the absence of standing or the presence of a political question suffices to prevent the power of the federal judiciary from being invoked by the complaining party. The more sensitive and complex task of determining whether a particular issue presents a political question causes courts, as did the District Court here, to turn initially, although not invariably,[5] to the question of standing to sue. In light of the District Court's action we turn to petitioners' contention that respondents lacked standing to bring the suit. Our conclusion that the District Court erred in holding that respondents had standing to sue as United States citizens,

---

[5] The lack of a fixed rule as to the proper sequence of judicial analysis of contentions involving more than one facet of the concept of justiciability was recently exhibited by the Court of Appeals for the Second Circuit, which bypassed a determination on standing to rule that a claim was not justiciable because it presented a political question:

"[T]he standing of a party need not come into question if a court determines that for other reasons the issue raised before the bench is non-justiciable."

That court thus held in effect that if no justiciable question is presented no one has standing. *DaCosta* v. *Laird,* 471 F. 2d 1146, 1152 (1973). See also *Sierra Club* v. *Morton,* 405 U. S. 727, 731 (1972); *Flast* v. *Cohen,* 392 U. S. 83, 100 (1968).

but was correct in denying respondents' standing as taxpayers, eliminates the need to consider the other questions presented by petitioners.

The District Court considered standing as to each of the four capacities in which respondents brought suit; it rejected standing as to three of the four, holding that respondents could sue only as citizens. The Court of Appeals' judgment of affirmance, based solely upon the opinion of the District Court, did not alter the District Court's ruling on standing. The standing question presented in the petition for certiorari is addressed to the District Court's holding on citizen standing and seeks to add the question whether respondents also had standing as taxpayers.[6] Respondents do not contend that the District Court erred in denying standing to them in the other two capacities in which they sought to proceed, i. e., as opponents of American military involvement in Vietnam, and as reservists. We therefore proceed to consideration of respondents' standing only as citizens and taxpayers.

## B

### Citizen Standing

To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents. *Indiana Employment Division* v. *Burney*, 409 U. S. 540 (1973); *Bailey* v. *Patterson*, 369 U. S. 31 (1962). In granting respondents standing to sue as representatives

---

[6] The Court of Appeals did no more than affirm the judgment of the District Court, including the latter's denial of respondents' standing as taxpayers. Petitioners may, however, have sought to raise the issue of taxpayer standing in this Court because of the ambiguous reference in the Court of Appeals' judgment of affirmance to *Flast* v. *Cohen, supra,* a taxpayer-standing case.

of the class of all United States citizens, the District Court therefore necessarily—and correctly—characterized respondents' interest as "undifferentiated" from that of all other citizens.

The only interest all citizens share in the claim advanced by respondents is one which presents injury in the abstract. Respondents seek to have the Judicial Branch compel the Executive Branch to act in conformity with the Incompatibility Clause, an interest shared by all citizens. The very language of respondents' complaint, *supra,* at 212, reveals that it is nothing more than a matter of speculation whether the claimed nonobservance of that Clause deprives citizens of the faithful discharge of the legislative duties of reservist Members of Congress. And that claimed nonobservance, standing alone, would adversely affect only the generalized interest of all citizens in constitutional governance, and that is an abstract injury.[7] The Court has previously declined to treat "generalized grievances" about the conduct of Government as a basis for taxpayer standing. *Flast* v. *Cohen,* 392 U. S., at 106. We consider now whether a citizen has standing to sue under such a generalized complaint.

Our analysis begins with *Baker* v. *Carr,* 369 U. S. 186 (1962), where the Court stated that the gist of the inquiry must be whether the complaining party has

> "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which

---

[7] The generalized nature of respondents' claim is revealed by the scope of relief sought, *i. e.,* removal of all reservist Members of Congress from Reserve status rather than the removal of only those reservist Members who manifested by their actions that they were influenced by their Reserve status to act adversely to respondents' interest.

the court so largely depends for illumination of difficult constitutional questions." *Id.,* at 204.

Although dealing with a case of claimed taxpayer standing, *Flast* v. *Cohen, supra,* gave further meaning to the need for a "personal stake" in noting that it was meant to assure that the complainant seeking to adjudicate his claim was the "proper party" to present the claim "in an adversary context and in a form historically viewed as capable of judicial resolution." 392 U. S., at 100, 101. In the circumstances of *Flast,* the Court held that the taxpayer-complainant before it had established a relationship between his status as a taxpayer and his claim under the Taxing and Spending Clause sufficient to give assurance

> "that the questions will be framed with the necessary specificity, that the issues will be contested with the necessary adverseness and that the litigation will be pursued with the necessary vigor to assure that the constitutional challenge will be made in a form traditionally thought to be capable of judicial resolution." *Id.,* at 106.

While *Flast* noted that the "case or controversy" limitation on the federal judicial power found in Art. III is a "blend of constitutional requirements and policy considerations," *id.,* at 97, the Court, subsequently, in the context of judicial review of regulatory agency action held that whatever else the "case or controversy" requirement embodied, its essence is a requirement of "injury in fact." *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U. S. 150, 152 (1970). Although we there noted that the categories of judicially cognizable injury were being broadened, *id.,* at 154, we have more recently stressed that the broadening of *categories* "is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury."

*Sierra Club* v. *Morton,* 405 U. S. 727, 738 (1972). And, in defining the nature of that injury, we have only recently stated flatly: "Abstract injury is not enough." *O'Shea* v. *Littleton,* 414 U. S. 488, 494 (1974).

*Ex parte Lévitt,* 302 U. S. 633 (1937), was the only other occasion in which the Court faced a question under Art. I, § 6, cl. 2, although that challenge was made under the Ineligibility Clause, not the Incompatibility Clause involved here. There a petition was filed in this Court seeking an order to show cause why one of the Justices should not be disqualified to serve as an Associate Justice. The petition asserted that the appointment and confirmation of the Justice in August 1937 was unlawful because the Act of March 1, 1937, permitting Justices to retire at full salary after a period of specified service, thereby increased the emoluments of the office and that the statute was enacted while the challenged Justice was a Senator. The appointment of the Justice by the President and his confirmation by the Senate were thus said to violate the Ineligibility Clause which provides:

> "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States . . . the Emoluments whereof shall have been encreased during such time . . . ."

The Court held:

> "The motion papers disclose no interest upon the part of the petitioner other than that of a citizen and a member of the bar of this Court. That is insufficient. It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action and it is not

sufficient that he has merely a general interest common to all members of the public." 302 U. S., at 634.[8]

The Court has today recognized the continued vitality of *Lévitt*,[9] *United States* v. *Richardson, ante,* at 176–179; see also *Laird* v. *Tatum,* 408 U. S. 1, 13 (1972). We reaffirm *Lévitt* in holding that standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share. Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally

---

[8] The Court cited a number of cases in support of its holding, nearly all of which contained language similar to that quoted in the text. See *Frothingham* v. *Mellon,* 262 U. S. 447, 488 (1923) (insufficient for a party to show "merely that he suffers in some indefinite way in common with people generally"); *Fairchild* v. *Hughes,* 258 U. S. 126, 129–130 (1922) ("Plaintiff has only the right, possessed by every citizen, to require that the Government be administered according to law and that the public moneys be not wasted. Obviously this general right does not entitle a private citizen to institute in the federal courts a suit"); *Tyler* v. *Judges of Court of Registration,* 179 U. S. 405, 406 (1900) ("even in a proceeding which he prosecutes for the benefit of the public . . . [the plaintiff] must generally aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens"). See also *Giles* v. *Harris,* 189 U. S. 475, 486 (1903) (Holmes, J.) ("The plaintiff alleges that the whole registration scheme of the Alabama constitution is a fraud upon the Constitution of the United States, and asks us to declare it void. But of course he could not maintain a bill for a mere declaration in the air"). Cf. *Newman* v. *Frizzell,* 238 U. S. 537, 550 (1915).

[9] The Court has also recently cited with approval two of the principal cases relied upon in *Ex parte Lévitt,* 302 U. S. 633 (1937). *Frothingham* v. *Mellon, supra,* was used for support in *O'Shea* v. *Littleton,* 414 U. S. 488, 494 (1974), as was *Fairchild* v. *Hughes, supra,* used in *Baker* v. *Carr,* 369 U. S. 186, 208 (1962).

capable of judicial resolution. It adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful. This personal stake is what the Court has consistently held enables a complainant authoritatively to present to a court a complete perspective upon the adverse consequences flowing from the specific set of facts undergirding his grievance. Such authoritative presentations are an integral part of the judicial process, for a court must rely on the parties' treatment of the facts and claims before it to develop its rules of law.[10]  Only concrete injury presents the factual context within which a court, aided by parties who argue within the context, is capable of making decisions.

Moreover, when a court is asked to undertake constitutional adjudication, the most important and delicate of its responsibilities, the requirement of concrete injury further serves the function of insuring that such adjudication does not take place unnecessarily. This principle is particularly applicable here, where respondents seek an interpretation of a constitutional provision which has never before been construed by the federal courts. First, concrete injury removes from the realm of speculation whether there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.

"The desire to obtain [sweeping relief] cannot be

---

[10] This is in sharp contrast to the political processes in which the Congress can initiate inquiry and action, define issues and objectives, and exercise virtually unlimited power by way of hearings and reports, thus making a record for plenary consideration and solutions. The legislative function is inherently general rather than particular and is not intended to be responsive to adversaries asserting specific claims or interests peculiar to themselves.

accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks." *McCabe* v. *Atchison, T. & S. F. R. Co.,* 235 U. S. 151, 164 (1914).

Second, the discrete factual context within which the concrete injury occurred or is threatened insures the framing of relief no broader than required by the precise facts to which the court's ruling would be applied. This is especially important when the relief sought produces a confrontation with one of the coordinate branches of the Government; here the relief sought would, in practical effect, bring about conflict with two coordinate branches.

To permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing "government by injunction."

> "The powers of the federal judiciary will be adequate for the great burdens placed upon them only if they are employed prudently, with recognition of the strengths as well as the hazards that go with our kind of representative government." *Flast* v. *Cohen,* 392 U. S., at 131 (Harlan, J., dissenting).[11]

Our conclusion that there is no citizen standing here, apart from being in accord with all other federal courts of appeals that have considered the question, until the

---

[11] We have expressed apprehension about claims of standing based on "mere 'interest in a problem.'" See, *e. g., Sierra Club,* 405 U. S., at 739. Earlier cases of the Court evidenced comparable concern. See, *e. g., Newman* v. *Frizzell,* 238 U. S., at 552 n. 8.

Court of Appeals' holding now under review,[12] is also consistent with the recent holdings of this Court. It is one thing for a court to hear an individual's complaint that certain specific government action will cause that person private competitive injury, *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U. S. 150 (1970), or a complaint that individual enjoyment of certain natural resources has been impaired by such action, *United States* v. *SCRAP,* 412 U. S. 669, 687 (1973), but it is another matter to allow a citizen to call on the courts to resolve abstract questions.[13]  The former provides the setting for a focused consideration of a concrete injury.  In the latter, although allegations assert an arguable conflict with some limitation of the Constitution, it can be only a matter of speculation whether the claimed violation has caused concrete injury to the particular complainant.

---

[12] *Lamm* v. *Volpe,* 449 F. 2d 1202, 1204 (CA10 1971); *Pietsch* v. *President of United States,* 434 F. 2d 861, 863 (CA2 1970) (Clark, J.); *Troutman* v. *Shriver,* 417 F. 2d 171, 174 (CA5 1969) (citing *Lévitt, supra*); *Velvel* v. *Nixon,* 415 F. 2d 236, 239 (CA10 1969); *Pauling* v. *McElroy,* 107 U. S. App. D. C. 372, 374, 278 F. 2d 252, 254 (1960); cf. *Sharrow* v. *Brown,* 447 F. 2d 94, 97 (CA2 1971). And aside from the decision under review, the only other opinion that appears to have ruled otherwise is *Atlee* v. *Laird,* 339 F. Supp. 1347 (ED Pa. 1972), which relied upon the decision of the District Court here.  *Id.,* at 1357 n. 8.

[13] The Court of Appeals' reliance on *Baker* v. *Carr,* 369 U. S. 186 (1962), is inapposite.  *United States* v. *SCRAP,* 412 U. S. 669 (1973), pointed out that a personal stake in a fraction of a vote in *Baker* v. *Carr* was sufficient to support standing.  *Id.,* at 689 n. 14. The injury asserted in *Baker* was thus a concrete injury to fundamental voting rights, as distinguished from the abstract injury in nonobservance of the Constitution asserted by respondents as citizens.

In *Baker* v. *Carr,* the Court cited with approval the early case of *Liverpool, N. Y. & Phila. S. S. Co.* v. *Comm'rs of Emigration,* 113 U. S. 33 (1885), where it was held that a federal court can adjudge rights only "in actual controversies." *Id.,* at 39.

Finally, the several considerations advanced by the District Court in support of respondents' standing as citizens do not militate against our conclusion that it was error to grant standing to respondents as citizens. First, the District Court acknowledged that any injury resulting from the reservist status of Members of Congress was hypothetical, but stressed that the Incompatibility Clause was designed to prohibit such potential for injury.[14] 323 F. Supp., at 840. This rationale fails, however, to compensate for the respondents' failure to present a claim under that Clause which alleges concrete injury. The claims of respondents here, like the claim under the Ineligibility Clause in *Lévitt, supra,* would require courts to deal with a difficult and sensitive issue of constitutional adjudication on the complaint of one who does not allege "a personal stake in the outcome of the controversy." *Baker* v. *Carr,* 369 U. S., at 204. To support standing there must be concrete injury in a form which assures "the necessary specificity" called for by *Flast,* 392 U. S., at 106, and "that concrete adverseness . . . upon which the court so largely depends for illumination of difficult constitutional questions." *Baker* v. *Carr, supra,* at 204.

---

[14] The District Court made analogy to conflict-of-interest statutes which, it said, are directed at avoiding circumstances of potential, not actual, impropriety. We have no doubt that if the Congress enacted a statute creating such a legal right, the requisite injury for standing would be found in an invasion of that right. *O'Shea* v. *Littleton,* 414 U. S., at 493 n. 2; *Linda R. S.* v. *Richard D.,* 410 U. S. 614, 617 n. 3 (1973); *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U. S. 150, 154 (1970). But to satisfy the Art. III prerequisite the complaining party would still be required to allege a specific invasion of the right suffered by him. Standing could not be found—as it is not here—in a citizen who alleged no more than the right of all other citizens to have government conducted without what he perceived, without himself having suffered concrete harm, to be proscribed conflicts of interest.

Standing was thus found by premature evaluation of the merits of respondents' complaint.[15]

The District Court next acknowledged this Court's longstanding reluctance to entertain "generalized grievances about the conduct of government," *Flast* v. *Cohen,* 392 U. S., at 106, but distinguished respondents' complaint from such grievances by characterizing the Incompatibility Clause as "precise [and] self-operative." 323 F. Supp., at 840. Even accepting that characterization of the Clause it is not an adequate substitute for the judicially cognizable injury not present here. Moreover, that characterization rested, as did the preceding characterization, on an interpretation of the Clause by way of the Court's preliminary appraisal of the merits of respondents' claim before standing was found. In any event, the Ineligibility Clause involved in *Lévitt, supra,* is no less specific or less "precise [and] self-operative" than the Incompatibility Clause.

The District Court further relied on the fact that the adverse parties sharply conflicted in their interests and views and were supported by able briefs and arguments. *Id.,* at 841. We have no doubt about the sincerity of respondents' stated objectives and the depth of their commitment to them. But the essence of standing

"is not a question of motivation but of possession of the requisite . . . interest that is, or is threatened

---

[15] Looking "to the substantive issues" which *Flast* stated to be both "appropriate and necessary" in relation to taxpayer standing was for the express purpose of determining "whether there is a logical nexus between the [taxpayer] status asserted and the claim sought to be adjudicated." 392 U. S., at 102. This step is not appropriate on a claim of citizen standing since the *Flast* nexus test is not applicable where the taxing and spending power is not challenged. Hence there was no occasion for the District Court or the Court of Appeals to reach or evaluate what it saw as the merits of respondents' complaint.

to be, injured by the unconstitutional conduct."
*Doremus* v. *Board of Education,* 342 U. S. 429, 435
(1952).

This same theme as to the inadequacy of motivation to
support standing is suggested in the Court's opinion in
*Sierra Club, supra:*

> "But a mere 'interest in a problem,' no matter how
> longstanding the interest and no matter how quali-
> fied the organization is in evaluating the problem,
> is not sufficient by itself to render the organization
> 'adversely affected' or 'aggrieved' within the mean-
> ing of the APA." 405 U. S., at 739.

Respondents' motivation has indeed brought them
sharply into conflict with petitioners, but as the Court
has noted, motivation is not a substitute for the actual
injury needed by the courts and adversaries to focus
litigation efforts and judicial decisionmaking. Moreover,
the evaluation of the quality of the presentation on the
merits was a retrospective judgment that could have
properly been arrived at only after standing had been
found so as to permit the court to consider the merits.
A logical corollary to this approach would be the mani-
festly untenable view that the inadequacy of the presen-
tation on the merits would be an appropriate basis for
denying standing.

Furthermore, to have reached the conclusion that re-
spondents' interests as citizens were meant to be pro-
tected by the Incompatibility Clause because the primary
purpose of the Clause was to insure independence of each
of the branches of the Federal Government, similarly in-
volved an appraisal of the merits before the issue of stand-
ing was resolved. All citizens, of course, share equally
an interest in the independence of each branch of Govern-
ment. In some fashion, every provision of the Consti-

tution was meant to serve the interests of all. Such a generalized interest, however, is too abstract to constitute a "case or controversy" appropriate for judicial resolution.[16] The proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries.

Closely linked to the idea that generalized citizen interest is a sufficient basis for standing was the District Court's observation that it was not irrelevant that if respondents could not obtain judicial review of petitioners' action, "then as a practical matter no one can." Our system of government leaves many crucial decisions to the political processes. The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing. See *United States* v. *Richardson, ante,* at 179.

## C

### *Taxpayer Standing*

Consideration of whether respondents have standing to sue as taxpayers raises a different question from whether they may sue as citizens. *Flast* v. *Cohen, supra,* established that status as a taxpayer can, under certain limited circumstances, supply the personal stake essential to standing. There, the Court held that, in order to ensure the necessary personal stake, there must be "a logical

---

[16] Satisfaction of the *Data Processing* "zone of interest" requirement seemingly relied upon to find citizen standing does not support such standing for two reasons: first, that case involved judicial review under the Administrative Procedure Act of regulatory agency action alleged to have caused private competitive injury; second, *Data Processing* required a showing of injury in fact, in addition to the "zone of interest" requirement. Until a judicially cognizable injury is shown no other inquiry is relevant to consideration of citizen standing.

nexus between the [taxpayer] status asserted and the claim sought to be adjudicated," 392 U. S., at 102. In *Flast,* the Court determined that the taxpayer demonstrated such a "logical nexus" because, (1) he challenged the exercise of "congressional power under the taxing and spending clause of Art. I, § 8 . . ." and (2) "the challenged enactment exceed[ed] specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power" under Art. I, § 8. *Id.,* at 102–103.

Here, the District Court, applying the *Flast* holding, denied respondents' standing as taxpayers for failure to satisfy the nexus test. We agree with that conclusion since respondents did not challenge an enactment under Art. I, § 8, but rather the action of the Executive Branch in permitting Members of Congress to maintain their Reserve status.[17]

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEWART, concurring.

I agree with the Court that the respondents lack standing to sue either as citizens or taxpayers in this case. Here, unlike *United States* v. *Richardson, ante,* p. 166, the respondents do not allege that the petitioners have refused to perform an affirmative duty imposed upon

---

[17] As noted earlier, *supra,* at 211, respondents requested the District Court to compel petitioners to seek to reclaim Reserve pay received by reservist Members of Congress. Such relief would follow from the invalidity of Executive action in paying persons who could not lawfully have been reservists, not from the invalidity of the statutes authorizing pay to those who lawfully were Reservists.

them by the Constitution. Nor can there be taxpayer standing under *Flast* v. *Cohen,* 392 U. S. 83, since there is simply no challenge to an exercise of the taxing and spending power.

The Court's judgment in this case is wholly consistent with *United States* v. *SCRAP,* 412 U. S. 669. Standing is not today found wanting because an injury has been suffered by many, but rather because *none* of the respondents has alleged the sort of direct, palpable injury required for standing under Art. III. Like the plaintiff in *Frothingham* v. *Mellon,* 262 U. S. 447, the respondents seek only to air what we described in *Flast* as "generalized grievances about the conduct of government." 392 U. S., at 106. Our prior cases make clear that such abstract allegations cannot suffice to confer Art. III standing, and I therefore join the opinion and judgment of the Court.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE MARSHALL joins, dissenting.

The requirement of "standing" to sue is a judicially created instrument serving several ends: (1) It protects the status quo by reducing the challenges that may be made to it and to its institutions. It greatly restricts the classes of persons who may challenge administrative action. Its application in this case serves to make the bureaucracy of the Pentagon more and more immune from the protests of citizens. (2) It sometimes is used to bar from the courts questions which by the Constitution are left to the other two coordinate branches to resolve, *viz.,* the so-called political question. (3) It is at times a way of ridding court dockets whether of abstract questions or questions involving no concrete controversial issue.

Our leading case is *Frothingham* v. *Mellon,* 262 U. S. 447, decided in 1923, where a taxpayer challenged the constitutionality of an Act of Congress that gave grants

to States which agreed to a plan to reduce maternal and infant mortality. The Court said:

"The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained. It is of much significance that no precedent sustaining the right to maintain suits like this has been called to our attention, although, since the formation of the government, as an examination of the acts of Congress will disclose, a large number of statutes appropriating or involving the expenditure of moneys for non-federal purposes have been enacted and carried into effect." *Id.*, at 487–488.

That ruling had in it an admixture of the "political question" because, said the Court, the only occasion when the federal court may act is when a federal law results in "some direct injury suffered or threatened, presenting a justiciable issue." *Id.*, at 488. When that element is lacking, judicial intrusion would trespass on powers granted another department of Government. "To do so would be not to decide a judicial controversy, but to assume a position of authority over the governmental

acts of another and co-equal department, an authority which plainly we do not possess." *Id.*, at 488–489.

In 1968—45 years after *Frothingham*—that case was revisited in *Flast* v. *Cohen*, 392 U. S. 83, where federal taxpayers sued to enjoin the expenditure of federal funds under an Act of Congress granting financial aid to religious schools. The Court held that those taxpayers did have "standing" to sue for two reasons. *First,* because they challenged the exercise of congressional power under the Taxing and Spending Clause of Art. I, § 8, of the Constitution, not the incidental expenditure of tax funds in the administration of an essentially regulatory statute. *Second,* because the challenged enactment exceeded the limitations imposed upon the exercise of the congressional taxing and spending power. See 392 U. S., at 102–104. Therefore, the Court concluded that the taxpayer had "the requisite personal stake," *id.*, at 101, in the litigation to have "standing" to sue and the Court went on to hold that the Establishment Clause of the First Amendment "operates as a specific constitutional limitation upon the exercise by Congress of the taxing and spending power conferred by Art. I, § 8." 392 U. S., at 104.

The present case implicates two provisions of the Constitution. Article I, § 8, cl. 1, provides: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States . . . ." Article I, § 6, cl. 2, of the Constitution says that "no Person holding any Office [1] under the United

---

[1] I agree with the conclusion of the House Judiciary Committee, H. R. Rep. No. 885, 64th Cong., 1st Sess. (1916), that a commission in the National Guard is an "office" in the constitutional sense. A commission in the Reserves is not distinguishable. See *United States* v. *Hartwell,* 6 Wall. 385.

States, shall be a Member of either House during his Continuance in Office."

The present suit is not one to oust Members from Congress. Rather it is brought against the Secretary of Defense challenging his keeping in the Armed Services of the United States Members of Congress who hold commissions as reservists.

Various Acts of Congress make various appropriations for the services of reservists. See, *e. g.*, Pub. L. 92–145, 85 Stat. 414; Pub. L. 92–545, § 801 *et seq.*, 86 Stat. 1154.

Article I, § 6, cl. 2, is often referred to as the Incompatibility Clause. At the 1783 convention some proposed that Members of Congress be allowed to serve in the Executive Branch,[2] others were opposed; Mason apparently represented the majority view when he insisted that "ineligibility will keep out corruption, by excluding office-hunters."[3] Article I, § 6, cl. 2, like the Establishment Clause of the First Amendment, "was designed as a specific bulwark against such potential abuses . . . and . . . operates as a specific constitutional limitation upon" such expenditures. *Flast* v. *Cohen, supra,* at 104.

As stated by Hamilton in The Federalist No. 76, p. 476 (H. Lodge ed. 1888), the Incompatibility Clause had a specific purpose: to avoid "the danger of executive influence upon the legislative body."

While respondents have standing as taxpayers, their citizenship also gives them standing to challenge the appropriation acts financing activities of the reservists.

We tend to overlook the basic political and legal reality that the people, not the bureaucracy, are the sovereign. Our Federal Government was created for the security and happiness of the people. Executives, lawmakers, and

---

[2] See 2 M. Farrand, The Records of the Federal Convention of 1787, pp. 283–290 (1911).

[3] *Id.*, at 491.

members of the Judiciary are inferior in the sense that they are in office only to carry out and execute the constitutional regime.

The Preamble of the Constitution states that "We the People" ordained and established the Constitution.

The Declaration of Independence stated that to insure "certain unalienable Rights," "Governments are instituted among Men, deriving their just powers from the consent of the governed" and "That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it."

The present case does not involve a restructuring of society—a procedure left to legislative action in part but mostly to constitutional conventions. All that the citizens in this case seek is to have the Constitution enforced as it is written. It is not a suit to unseat Members of Congress. Any decree that issued would run to the Secretary of Defense to take the challenged reservists off his list.

The interest of citizens is obvious. The complaint alleges injuries to the ability of the average citizen to make his political advocacy effective whenever it touches on the vast interests of the Pentagon. It is said that all who oppose the expansion of military influence in our national affairs find they are met with a powerful lobby— the Reserve Officers Association—which has strong congressional allies.

Whether that is true or not we do not know. So far as the Incompatibility Clause of the Constitution is concerned that contention is immaterial. It is as immaterial to the function of Art. I, § 6, cl. 2, of the Constitution as would be a suggestion that the establishment of a religion under the First Amendment is benign in a given case. What the Framers did in each case was to set up constitutional fences barring certain affiliations, certain kinds of appropriations. Their judgment was that the

potential for evil was so great that no appropriations of that character should be made.

The interest of citizens in guarantees written in the Constitution seems obvious. Who other than citizens has a better right to have the Incompatibility Clause enforced? It is their interests that the Incompatibility Clause was designed to protect. The Executive Branch under our regime is not a fiefdom or principality competing with the Legislative as another center of power. It operates within a constitutional framework, and it is that constitutional framework that these citizens want to keep intact. That is, in my view, their rightful concern. We have insisted that more than generalized grievances of a citizen be shown, that he must have a "personal stake in the outcome," *Baker* v. *Carr,* 369 U. S. 186, 204. But that "personal stake" need not be a monetary one. In *Baker* v. *Carr* it was the right to vote, an important badge of citizenship. The "personal stake" in the present case is keeping the Incompatibility Clause an operative force in the Government by freeing the entanglement of the federal bureaucracy with the Legislative Branch.

*Ex parte Lévitt,* 302 U. S. 633, is not opposed. Lévitt moved in this Court to have it declare the appointment of Mr. Justice Black unconstitutional. He alleged that Mr. Justice Black, as Senator, had voted to increase the "emoluments" of the office of Associate Justice and was therefore barred from taking office by reason of Art. I, § 6, cl. 2, of the Constitution. The Court denied the motion to file an original action stating:

> "It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury

as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public." 302 U. S., at 634.

The only "emolument" of office which Mr. Justice Black as Senator had voted to increase was the retirement compensation of federal judges as spelled out in the Act of March 1, 1937, c. 21, 50 Stat. 24. That emolument might never accrue to an appointee for he would first have to serve a designated number of years. It turned out that even though Justice Black served over 34 years he never received any benefits under the Retirement Act. Hence the Court showed wisdom in deciding that Lévitt showed no "direct injury." His claim of constitutional violation was remote, speculative, and contingent. The present suit has no such deficiency. It asserts a present, ongoing conflict between the Pentagon's policies and the Incompatibility Clause of the Constitution.

The interest of the citizen in this constitutional question is, of course, common to all citizens. But as we said in *United States* v. *SCRAP,* 412 U. S. 669, 687–688, "standing is not to be denied simply because many people suffer the same injury. . . . To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody."

I would affirm the judgment below.

MR. JUSTICE BRENNAN, dissenting.*

The "standing" of a plaintiff to be heard on a claim of invasion of his alleged legally protected right is established, in my view, by his good-faith allegation that " 'the challenged action has caused him injury in fact.' " *Bar-*

---

*[This opinion applies also to No. 72–885, *United States et al.* v. *Richardson, ante,* p. 166.]

*low* v. *Collins,* 397 U. S. 159, 167–168 (1970) (concurring in the result and dissenting). The Court's further inquiry, in each of these cases, into the connection between "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question," *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U. S. 150, 153 (1970), and the "interest sought to be protected by the complainant," *ibid.,* is relevant, not to "standing" but, if at all, only to such limitations on exercise of the judicial function as justiciability, see, *e. g., Baker* v. *Carr,* 369 U. S. 186 (1962), or reviewability, see, *e. g., Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 140 (1967).

Richardson plainly alleged injury in fact. My Brother STEWART demonstrates this in his analysis of Richardson's claimed right to have the budget of the Central Intelligence Agency published. The claim was not merely that failure to publish was a violation of the Constitution. The claim went further and alleged that this violation deprived Richardson, as an individual, and not as an inseparable part of the citizenry, of a right given him by Art. I, § 9, cl. 7. Moreover, his complaint, properly construed, alleged that the violations caused him injury not only in respect of his right as a citizen to know how Congress was spending the public fisc, but also in respect of his right as a voter to receive information to aid his decision how and for whom to vote. These claims may ultimately fail on the merits, but Richardson has "standing" to assert them.

Similarly, I would hold that respondent Reservists Committee and its members have demonstrated sufficient "injury in fact" to maintain their suit. Their allegation that they are injured as taxpayers, while at first glance seeming extraordinarily difficult to prove, is neither impossible nor, on the basis of this record, made in bad faith. If the Secretary of Defense takes a contrary posi-

tion with regard to either of these requirements, it is open to him to move for summary judgment and compel respondents to establish their position. See *Barlow, supra,* at 175. More stringent requirements, such as the Court's demand that these respondents satisfy *Flast*'s "nexus" requirement, are not appropriate issues for resolution under the rubric of "standing." Since I would find the injury-in-fact requirement met by respondents' taxpayer allegation, I have no occasion to reach the question whether respondent Reservists Committee and its members' allegations of injury to their interests as citizens would be sufficient to confer standing under the circumstances of this case.

Unlike my Brother STEWART, who distinguishes these two cases, I would find that *Flast* v. *Cohen,* 392 U. S. 83 (1968), supports the conclusion that these allegations of injury-in-fact are sufficient to give respondents in both cases "standing." Speaking generally of standing, we there said:

> "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' *Baker* v. *Carr,* 369 U. S. 186, 204 (1962). In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable."
> *Id.,* at 99–100.

The two-pronged test fashioned by *Flast* was not a qualification upon these general principles but was fashioned solely as a determinant of standing of plaintiffs alleging only injury as taxpayers who challenge alleged violations of the Establishment and Free Exercise Clauses of the First Amendment. See *Barlow* v. *Collins, supra,* at 170–172. The extension of that test to the very different challenges here only produces the confusion evidenced by the differing views of the *Flast* test expressed in the several opinions filed today in these cases. Outside its proper sphere, as my Brother POWELL soundly observes, that test is not "a reliable indicator of when a federal taxpayer has standing." *United States* v. *Richardson, ante,* at 180. We avoid that confusion if, as I said in *Barlow, supra,* at 176, we recognize:

> "[A]lleged injury in fact, reviewability, and the merits pose questions that are largely distinct from one another, each governed by its own considerations. To fail to isolate and treat each inquiry independently of the other two, so far as possible, is to risk obscuring what is at issue in a given case, and thus to risk uninformed, poorly reasoned decisions that may result in injustice. . . .
>
> "The risk of ambiguity and injustice can be minimized by cleanly severing, so far as possible, the inquiries into reviewability and the merits from the determination of standing."

MR. JUSTICE MARSHALL, dissenting.

I agree with my Brother DOUGLAS that respondents have standing as citizens to bring this action. I cannot accept the majority's characterization of respondents' complaint as alleging only "injury in the abstract" and " 'generalized grievances' about the conduct of the Gov-

ernment." *Ante,* at 217. According to their complaint, respondents are present and former members of the various Armed Forces Reserves

> "organized for the purpose of opposing the military involvement of the United States in Vietnam and of using all lawful means to end that involvement, including efforts by its members individually to persuade the Congress of the United States and all members of the Congress to take all steps necessary and appropriate to end that involvement."

The specific interest which they thus asserted, and which they alleged had been infringed by violations of the Incompatibility Clause, though doubtless widely shared, is certainly not a "general interest common to all members of the public." *Ex parte Lévitt,* 302 U. S. 633, 634 (1937). Not all citizens desired to have the Congress take all steps necessary to terminate American involvement in Vietnam, and not all citizens who so desired sought to persuade members of Congress to that end.

Respondents nevertheless had a right under the First Amendment to attempt to persuade Congressmen to end the war in Vietnam. And respondents have alleged a right, under the Incompatibility Clause, to have their arguments considered by Congressmen not subject to a conflict of interest by virtue of their positions in the Armed Forces Reserves. Respondents' complaint therefore states, in my view, a claim of direct and concrete injury to a judicially cognizable interest. It is a sad commentary on our priorities that a litigant who contends that a violation of a federal statute has interfered with his aesthetic appreciation of natural resources can have that claim heard by a federal court, see *United States* v. *SCRAP,* 412 U. S. 669, 687 (1973), while one who contends that a violation of a specific provision of the United

States Constitution has interfered with the effectiveness of expression protected by the First Amendment is turned away without a hearing on the merits of his claim.

I respectfully dissent.