**NATIONAL URBAN LEAGUE, Plaintiff,**

v.

**OFFICE OF the COMPTROLLER OF the CURRENCY et al., Defendants.**

**Civ. A. No. 76–718.**

United States District Court, District of Columbia.

May 3, 1978.

William L. Taylor, Roger S. Kuhn, Washington, D. C., Martin E. Sloane, Daniel A. Searing, Jay Mulkeen, Nat. Comm. Against Discrimination in Housing, Washington, D.

C., Jack Greenberg, James E. Nabrit, III, Charles Williams, NAACP Legal Defense & Ed. Fund, New York City, for plaintiff.

Robert M. Rader, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Relying in part on Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–19 (1970 & Supp. V 1975), plaintiff National Urban League seeks aid of this Court to require the Federal Reserve Board adequately to enforce its alleged responsibility to prevent race and sex discrimination in home mortgage lending. Following extended pretrial discovery, plaintiff seeks partial summary judgment, claiming on the basis of affidavits and other data that banks subject to the Board's regulatory control discriminate and that the Board's regulatory procedures designed to prevent such discrimination are faulty and insufficient. The Board opposes and counters with a motion for summary judgment, asserting plaintiff's lack of standing. The issues were extensively briefed and argued.

## I.

This statement of the issues does not reflect what has preceded these discrete motions, and some background is needed to understand the context in which the Court must turn to consideration of the challenge to the Board's standing. As early as 1971 a coalition of civil rights organizations commenced strenuous efforts to persuade four federal banking agencies to adopt what the coalition perceived to be appropriate examination and enforcement procedures necessary to alleviate racial discrimination by home mortgage lenders subject to federal regulation. Conditions in the home mortgage field have received congressional attention, and considerable indications of pervasive race and sex discrimination in home mortgage lending can be documented from field surveys, congressional hearings, and similar sources. Failing to receive adequate assurances, 11 of these civil rights organizations commenced this omnibus suit in April 1976 against the four agencies—the Federal Home Loan Bank Board, the Federal Deposit Insurance Corporation, the Comptroller of the Currency, and the Federal Reserve Board—and their chief officials.

The complaint is predicated on three basic propositions:

(1) Race and sex discrimination has long existed and continues to exist in the home mortgage lending operations of institutions supervised by the defendant agencies, and the defendants are aware of this.

(2) Defendants are obligated by statute to exercise their supervisory and regulatory powers to ensure against such discrimination.

(3) Defendants have abdicated this responsibility by failing to adopt standard procedures used by other agencies in civil rights enforcement.

Over the ensuing months the case has been satisfactorily resolved by agreement except as to the Federal Reserve Board and its officers (hereinafter collectively referred to as the "Board"). The three other agencies whose activities are much more prominent in the field of home mortgage lending have entered into arrangements which plaintiffs believe give assurance of adequate enforcement and monitoring of the problems perceived when suit was initiated. The Board, on the other hand, has strenuously opposed the suit from the outset in the belief that it presently exercises supervision over the relatively small amount of home mortgage lending accountable to its members[1] and that such supervision is effective against discrimination and adequate in all respects.

From the very beginning of the litigation the Court has repeatedly expressed concerns as to the standing of plaintiffs to proceed. Because of its doubts as to the

1. Defendants' affidavits indicate that Federal Reserve member banks hold less than two per-cent of the dollar amount of all outstanding purchase-money home mortgage loans.

institutional standing claimed, the Court required strict compliance with *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and gave plaintiffs opportunity to file affidavits showing injury to members. Continuances were sought and granted, but when forthcoming the submissions were minimal and sketchy, thus indicating the tenuous nature of the plaintiffs' genuine standing. Doubts were initially resolved in favor of plaintiffs after some plaintiff organizations presented by affidavit a prima facie showing that one or more members claimed injury at the hands of a regulated bank because the bank failed to lend due to race or sex.

Once settlements with the Board's sister agencies were arranged, standing was again considered. Most of the plaintiffs were dropped since they had made no showing that they or any of their members had been injured by any action of the Board, the only remaining defendant. Now only the National Urban League remains, and its status from the viewpoint of standing rests solely on the allegations of the complaint and on the affidavit of one Birgit Fein who suspected sex discrimination in her dealings with a single bank regulated by the Board. When plaintiff moved for partial summary judgment, the Board sought and received permission to inquire more fully into the alleged basis of the Urban League's standing, and having done so its countermotion for summary judgment followed. The League's standing must be examined more closely in the light of the further facts developed.

## II.

In the amended, unverified complaint filed July 14, 1976, the National Urban League alleges that its general purposes are, among others, to improve the living and working conditions of blacks and other similarly disadvantaged minorities and to foster better race relations and increased understanding among all persons; that the League and its affiliates seek to assist black residents of low-income, deteriorating neighborhoods to find and finance standard housing outside such areas; that in their efforts to find and finance homes outside ghetto areas, the clientele served by the League and its affiliates, as well as members of the League and of its affiliates, suffer and continue to suffer from the discriminatory practices listed in the complaint engaged in by lending institutions regulated and supervised by the defendants; that the League, its affiliates, and their members and clientele are directly and adversely affected by the failure and refusal of the defendants to act to end such discriminatory practices by institutions which they regulate; and that the defendants' failure injures the League and its affiliates in that it compels them to expend funds, staff time, and other resources in combating such practices which they would not be compelled to expend were the defendants to take action as prayed in this complaint. These generalized allegations have no specificity as far as the Board is concerned.

Birgit Fein, the only individual member of the Urban League claiming injury, states that in December 1976 she spoke to a Ms. Hugel, an assistant manager of the Bankers Trust Company in New York regarding a mortgage loan on a $32,000 home she wished to buy in Brooklyn. She further states that Ms. Hugel first categorically denied that Bankers Trust made mortgage loans, but subsequently said that some mortgage loans were made in exceptional circumstances, for example, to a person who was earning $100,000 a year. Ms. Fein then states that Ms. Hugel did not ask her for any information regarding her credit record or income or the house and did not offer an application. After Ms. Fein wrote to the New York State Banking Department to complain of sex discrimination, a vice-president of Bankers Trust contacted her to apologize for the misinformation. His apology was restated in a letter dated February 24, 1977, in which the bank apologized for the "shoddy treatment" Ms. Fein received but offered no intimation that Ms. Fein was denied a mortgage loan for discriminatory reasons.

Bankers Trust provided defendants with the affidavit of Mary Hugel, the loan officer who dealt with Birgit Fein, to explain why Ms. Fein was not offered a mortgage loan. In her affidavit Ms. Hugel states that she informed Ms. Fein that the mortgage loan policy of the bank "was not making mortgage loans subject to a few exceptions, but particularly where circumstances existed indicating important · relations where the denial of a mortgage application to a customer might result in a substantial loss of business to the bank in other areas. . . . Ms. Fein was plainly not the substantial relationship which justify an exception to the bank's policy. She merely had a special checking account and a small savings account at the bank."

Ms. Hugel further states that she has since "reviewed the bank's policy with regard to mortgage loans with my superiors and these discussions have confirmed my understanding that residential mortgage loans were then made only as an exception." The exceptional nature of the bank's mortgage loan policy is evident from Bankers Trust's overall reduction of its family home mortgage portfolio, and also by comparing its outstanding commercial loans ($8,000,000) against the total number of residential mortgage loans made in 1976 (three). Ms. Fein's sex was not shown to be a factor in her inability to secure a mortgage loan from Bankers Trust, although it is clear that at the time of her brief dealings with the Board before arranging a loan elsewhere she felt she was the object of sex discrimination.

### III.

The National Urban League seeks to establish standing both in its own right and as a representative of injured members. Neither position remains tenable, however, when the above undisputed facts are appraised against the standards for determining standing enunciated in *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Harrington v. Bush*, 180 U.S.App. D.C. 45, 553 F.2d 190 (1977); and other pertinent cases, including especially the recent decision of this Circuit in *American Jewish Congress v. Vance*, No. 76–1983 (D.C.Cir. Apr. 21, 1978).

Plaintiff, relying on *Trafficante*, claims that it has been conferred statutory standing under Title VIII of the Civil Rights Act of 1968. *See Warth v. Seldin*, 422 U.S. at 513–14 & n. 21, 95 S.Ct. 2197. Title VIII, among other things, makes it unlawful to interfere with a person because of his having aided and encouraged others to enjoy rights protected by the Fair Housing Act. 42 U.S.C. § 3617 (1970). *Trafficante*, however, did no more than declare that standing in suits brought under Title VIII should be defined "as broadly as is permitted by Article III of the Constitution." 409 U.S. at 209, 93 S.Ct. at 367 (quoting *Hackett v. McGuire Bros., Inc.*, 445 F.2d 442, 446 (3d Cir. 1971). It explicitly did not, nor could it, abrogate the Article III requirement that a plaintiff establish that either it or its members suffered "injury in fact" and that this injury "was the consequence of the defendants' actions, or that prospective relief will remove the harm." *Warth v. Seldin*, 422 U.S. at 505, 95 S.Ct. at 2208; *accord, Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. at 38, 41 n. 22, 96 S.Ct. 1917; *see Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. at 209, 211, 93 S.Ct. 364. This "irreducible constitutional minimum," *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 227 n. 16, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), is not met by plaintiff either as an institution or as a representative of its members.

As an institution, plaintiff's interest in and commitment to the problem of housing discrimination, no matter how strong, "cannot substitute for judicially cognizable injury." *American Jewish Congress v. Vance*, slip op. at 7; *see, e. g., Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. at 226, 94 S.Ct. 2925. Neither,

apparently, can its alleged expenditure of money on the problem. Although the Supreme Court has never explicitly determined whether an organization's expenditures in combating a general problem are sufficient to establish "injury in fact" in a lawsuit on the same subject matter, the tone of its decisions indicates that they are not. In *Simon*, a case in which plaintiff quite likely did expend such funds, the Court explicitly stated not only that no injury to the plaintiff institution had been shown, but that in addition no such injury *could* be shown. 426 U.S. at 40, 96 S.Ct. 1917. Many other cases appear also to have implicitly so held. In *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), for example, standing was denied plaintiff despite the near certainty that the plaintiff club had previously devoted considerable funds to obtain the result sought in the lawsuit.

 As far as Birgit Fein's claim is concerned, it is clear that discovery has demonstrated no claim of present harm or threat of specific future harm. Her unfounded fears that she was a victim of sex discrimination are not enough. There is a total absence of any causal relationship between the matters alleged in the complaint and what occurred in her particular dealings with Bankers Trust. She, too, has failed to establish injury in fact, and therefore plaintiff has no standing to sue as her representative. *Warth v. Seldin*, 422 U.S. at 511, 95 S.Ct. 2197.[2]

Even assuming that injury in fact has been demonstrated, there is no showing that the Urban League's expenditures were in any way fairly traceable to the Board's failure adequately to regulate its members, who account even in the aggregate for only a miniscule percentage of home mortgage loans. Nor does it appear that the conditions of which Urban League complains would be rectified if the Board's regulatory techniques took a different form.

Because it has failed to satisfy the Article III requirement of standing, plaintiff's motion for summary judgment is moot. Defendants' motion for summary judgment is granted, and the complaint against them must be and hereby is dismissed.

SO ORDERED.

---

2. By way of motion to revise an earlier Order of the Court, plaintiff seeks to reinstate National Neighbors as an additional plaintiff on the grounds that the affidavit of Betsy Collard, a member of an affiliate of National Neighbors, demonstrates sufficient injury and causal relationship to establish the standing of National Neighbors to sue as her representative. The representations made in the motion simply reinforce the Court's prior determination that the relationship between Ms. Collard and National Neighbors is too tenuous to support the latter's standing. Moreover, the affidavit makes no prima facie showing of either race or sex discrimination or of any injury suffered therefrom. Indeed, an attachment to the affidavit indicates that the affiant apparently *received* a mortgage from the only Federal Reserve member bank with whom she dealt. The motion is therefore denied.