October 18, 1977

# 77–59    MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

## Members of Congress Holding Reserve Commissions

This responds to your request for our opinion respecting the matter of Members of Congress holding commissions as officers in the Armed Forces Reserves. The matter originated in a letter from a Member of Congress to the President. That letter requests the President to stop the practice of allowing Members of Congress who hold reserve commissions to receive pay, earn retirement credit, or advance in rank while serving. The letter alluded to the implicit pressure on the Armed Forces to promote these officers as a source of impropriety, and stated that the "provision of the Constitution preventing Congressmen from holding any other office" has not yet been brought to bear on the problem.

We have been informed that your principal concern is whether this constitutional provision, the Incompatibility Clause,[1] requires the President to take action with respect to the reserve commissions currently held by Members of Congress. It is our opinion that the exclusive responsibility for interpreting and enforcing the Incompatibility Clause rests with Congress.

### Background

We are informed by the Department of Defense that 25 Members of Congress now hold commissions in the reserves: one in the Ready Reserve, 11 in the Standby Reserve in active status, and 13 in the Standby Reserve in inactive status.

(a) Reserve officers below the rank of lieutenant colonel or commander are appointed by the President alone; those above, with the Senate's advice and consent. All serve at the President's pleasure.[2]

(b) Members of the Ready Reserve are required to attend a minimum amount of annual training, for which they receive pay and retirement

---

[1] Art. I, § 6, Cl. 2, quoted *infra.*
[2] 10 U.S.C. § 593(a)–(b).

credits.[3] They may be called to active duty for up to 24 months during a national emergency declared by the President.[4]

(c) Members of the Standby Reserve on active status are not required to attend training but may voluntarily do so for promotion and retirement credits.[5] They may be called to active duty in time of war or national emergency declared by Congress if the Selective Service System determines that they are available.[6] Members on inactive status do not train, do not receive either pay or pension credits, and are ineligible for promotion.[7]

(d) In addition to their other active duty obligations, members of the Ready and Standby Reserves in active status may be ordered to active duty for up to 15 days per year at any time.[8]

Current Department of Defense regulations require Members of Congress in the Ready Reserve to be transferred to the Standby Reserve.[9] Once transferred, they may volunteer for active status in the Standby Reserve.[10] Members who were on inactive status when they entered Congress apparently remain there. Thus, at least 12 Members of Congress are eligible to earn promotion and retirement credits by voluntary participation in military training. The others who hold commissions derive no formal benefits from them.

One attempt was made to end this practice by litigation. In *Reservists Committee to Stop the War* v. *Laird,* 323 F. Supp. 833 (D. D.C., 1971), *aff'd without opinion,* 495 F. 2d 1075 (D.C. Cir. 1974), the District Court held that a reserve commission was an office under the United States within the meaning of the Incompatibility Clause and entered a declaratory judgment that a Member of Congress was ineligible to hold a commission during his continuance in office. The Supreme Court reversed on the ground that plaintiffs, as members of the general public, lacked standing to sue. It did not reach the merits. *Schlesinger* v. *Reservists Committee to Stop the War,* 418 U.S. 208, 216–27 (1975).

### The Constitutional Provisions Involved

Article I, § 6, Cl. 2, of the Constitution provides:

> No Senator or Representative shall, during the time for which he was elected, be appointed to any Civil Office under the Authority of the United States, which shall have been created, or the Emolu-

---

[3] *See* 10 U.S.C. §§ 1331–32; 37 U.S.C. §§ 204(a)(2), 206(a).

[4] 10 U.S.C. §§ 673(a), 674(a). Members of the Ready Reserve may also be called to active duty for the duration of any war or national emergency declared by Congress. 10 U.S.C. § 672(a).

[5] 10 U.S.C. § 273(a); 32 CFR § 102.3(c); DOD Dir. 1215.6, para. V. C. 2.a.(4).

[6] 10 U.S.C. §§ 672(a), 674(a).

[7] *See* 10 U.S.C. § 273(c); 32 CFR § 136.3(b)(1); DOD Dir. 1215.6, para. V.C. 2.b.

[8] 10 U.S.C. § 672(b). The statue does not apply to reserves on inactive status, but Department of Defense regulations allow an inactive reservist to be restored to active status and called up. *See* 32 CFR § 136.3(b)(3).

[9] 32 CFR § 125.4(c)(2).

[10] 32 CFR § 102.3(f).

243

ments whereof shall have been increased during such time; and no Person holding any Office under the United States shall be a Member of either House during his Continuance in Office.

Article I, § 5, Cl. 1, provides:

Each House shall be the Judge of the Elections, Returns and Qualifications of its own members.

Article II, § 2, Cl. 2, provides:

He [the President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

## Discussion

It should be noted that the first portion of Article I, § 6, Cl. 2, restricts the President's power to appoint Members of Congress to civil offices, while the second portion of the clause declares that no person who holds any office shall be a Member of Congress while he or she retains that office. It has long been settled within the executive branch that the President, in exercising his powers of appointment under Article II, § 2, Cl. 2, will not make an appointment in violation of the first portion of the clause. *See, e.g.*, 42 Op. Atty. Gen. No. 36; 17 Op. Atty. Gen. 365 (1882). On the other hand, as far as we know, the President has never undertaken to enforce the second portion of the clause, which disqualifies individuals who have already been appointed from assuming or retaining seats in Congress.[11]

In his brief to the Supreme Court in the *Reservists Committee Case*, the Solicitor General argued that "[b]y its terms, history, and long Congressional construction, the clause constitutes a qualification for membership in Congress—no one occupying such an office may serve as a Senator or Representative. . . ." And, he continued, the determination of whether the clause is violated is "a determination which under Article I, § 5, clause 1 of the Constitution, only the Congress can make." [12]

---

[11] In 40 Op. Atty. Gen. 301 (1943), Attorney General Biddle advised President Roosevelt that the power to enforce Art. I, § 6, Cl. 2, rested with Congress and that the House of Representatives had in the past disqualified Members who accepted military commissions for active service. He concluded that it would be a "sound and reasonable policy" for the President to avoid any possible conflict with the clause by not permitting Members of Congress to serve on active duty. We do not know what action, if any, the President took in response to the opinion.

[12] Brief for Petitioner at 8, O.T. 1973, No. 72–1188.

Moreover, we suggest that it would be undesirable for the President himself to attempt to confront the problem. If he were to inform the Congressman that in his view the holding of reserve commissions by Members of Congress did violate Article I, § 6, clause 2, that determination certainly would not bind the Congress. Conversely, if he stated that the practice was permitted by the Constitution, Congress could enforce the clause against its Members notwithstanding.[13]

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[13] The Solicitor General argued for the executive branch at length that a commission in the Armed Forces reserves is not an "Office under the United States" within the meaning of Article I, § 6, Clause 2. The details of the argument appear at pages 31–42 of the brief. As we have pointed out above, the Supreme Court did not reach the question.