625 F.2d 834
 Roy and Josie FISHER, next of kin of Elizabeth Fisher, Boyd
and Elizabeth Lewis, next of kin of Elizabeth, Ellen,
Warren, and Jeff Lewis; Lloyd D. and Virginia Hall, next of
kin of Kenneth and Lloyd D. Hall; and George and Joyce Brown
Hutton, next of kin of Mondre Hutton; all on behalf of any
persons similarly situated, Plaintiffs-Appellees,
and
United States of America, Plaintiff-Intervenor-Appellee,
v.
TUCSON SCHOOL DISTRICT NUMBER ONE; Tucson School District
Number One Board of Education and its Individual Members,
Leba Wine, Soleng Tom, Mitchell Vavich, Helen Haffley, and
Katie Dusenberry; and Thomas Lee, Superintendent of Tucson
School District Number One, Defendants-Appellees,
and
Sidney L. Sutton, Sally J. Sutton, and Sidney L. Sutton and
Sally J. Sutton as Parents, Natural Guardians and next
friend of Sean Sutton; John R. Centeno, Mary Katherine
Centeno and John R. Centeno and Mary Katherine Centeno as
Parents, Natural Guardians and next friend of Sandra
Katherine Centeno and James Lee Centeno; Librada G. Ruiz and
Librada G. Ruiz as Parent, Natural Guardian and next friend
of Andres L. Ruiz; Sidney Taize and Sidney Taize as Parent,
Natural Guardian and next friend of Jonathan Taize, Lisa
Taize and Joshua Taize, Defendants-Intervenors-Appellants.
Sidney L. SUTTON, Individually and on Behalf of his Wife and
Minor Children, Appellant,
and
Maria Mendoza, Individually and on behalf of Stephen
Mendoza, a Minor; Theresa Trujillo, Individually and on
behalf of Albert Trujillo, Joe Trujillo, and David Trujillo,
Minors; Alberto Sanchez, Individually and on behalf of Jaime
Sanchez, Ana Celis Sanchez, John Sanchez, Ernest Sanchez,
George Sanchez, and Betty Sanchez, Minors; and on behalf of
all others similarly situated, Plaintiffs-Objectors-Appellees,
and
Julia O. Flores, Billie Gutierrez, Theresa Medina, Betty M.
Granillo, Carol Cruz-Popkin, Barney Paul Popkin, Carmen P.
Urrutia, Manuel Alvarado, Carolyn Hackworth, Gloria Hagler,
Johnny Randolph-Kelly, Thelma B. Manriquez, Aldolfo A.
Suarez, Nat Washington II, Ralph O. Gomez, Juan Brito,
Marcia Almeda, Emilia Talamantez, Ellen Lee Esperanza Silva,
Antonette Romo, Ronald Q. Huerta, and Lupe Montano,
Plaintiffs-Objectors-Appellees,
and
United States of America, Plaintiff-Intervenor-Appellee,
v.
TUCSON SCHOOL DISTRICT NUMBER 1; the Board of Education,
Tucson School District Number 1; Leba Wine, Soleng Tom,
Mitchell Vavich, Helen Haffley, and Katie Dusenberry,
Individually and as Members, Board of Education, Tucson
School District Number 1; Thomas Lee, Individually and as
Superintendent of Tucson School District Number 1,
Defendants-Appellees.
 No. 79-3378.
 United States Court of Appeals,
Ninth Circuit.
 June 27, 1980.
 
 Edmund D. Kahn, Tucson, Ariz., for appellants.
 J. M. Brammer, Jr., Tucson, Ariz., John R. Moore, Washington, D. C., Morris J. Baller, San Francisco, Cal., William J. Maledon, Phoenix, Ariz., argued, for appellees; Rubin Salter, J. Wm. Brammer, Tucson, Ariz., on brief.
 
 
 1
 Appeal from the United States District Court for the District of Arizona.
 
 
 2
 Before CHOY and SNEED, Circuit Judges, and EAST,* District Judge.
 
 EAST, District Judge:
 
 3
 This is a companion case to Mendoza et al. v. Tucson Unified School District Number 1, 623 F.2d 1338 (9th Cir. 1980), in which we affirm the District Court's approval of a stipulated settlement to a school desegregation action. Pursuant to that stipulation of settlement, the principal parties subsequently reached agreement on modifications and extensions of the original desegregation plan. Sutton, et al., a group of white parents opposed to involuntary school busing, appearing as intervenors in Fisher, challenged portions of the agreement to modify the plan. The Suttons appeal from the District Court's May 11th order approving the Phase II modifications to the desegregation plan, and from the Court's June 8th order denying their renewed motion for certification as class representatives of a class opposed to busing.
 
 
 4
 We agree with the District Court that the motion was untimely made. However, we find that the Suttons have no standing to appeal either of the orders. Therefore, the appeal is dismissed.
 
 
 5
 This appeal arises out of the same facts as does Mendoza, 623 F.2d 1338. Mendoza, District Court No. 74-204, and Fisher, District Court No. 74-90, were pending companion causes in the District Court, and in 1977, they went to trial as consolidated class actions. On June 5, 1978, the District Court ruled in the plaintiffs' favor in both causes. Additional parties were allowed by the District Court to intervene in the cases prior to trial on the merits: the United States Department of Justice, on the plaintiff side in both actions, and Sutton, et al., appellants here, on the defendant side in this cause (action on behalf of the Black class).
 
 
 6
 A desegregation plan offered by the District was found by the Court to be constitutional on August 11, 1978, and a settlement of all issues in the case was approved by the Court on August 31, 1978. The stipulation of settlement contained substantive and procedural provisions to expand the desegregation plan beyond that approved for the 1978-79 school year (the plan approved by the Court on August 11, 1978). These substantive portions of the settlement imposed several requirements: It required the School District to examine the enrollment at certain specified schools and to alter student assignments so as to reduce the minority enrollment below 50 percent; it required the District to examine enrollment at certain other schools and make recommendations as to whether the schools should be closed, replaced, etc.; and it required that the graduates of certain elementary schools be assigned to junior high schools with no more than 50 percent minority enrollment.
 
 
 7
 Procedurally, the settlement directed the School District to formulate student assignment plans to meet these requirements and submit them to counsel for the class plaintiffs and the United States. If the parties plaintiff found the proposals unacceptable, counter proposals could be offered. If, after discussions, the parties were able to agree upon a plan, it would be submitted to the District Court for its approval. If no agreement could be reached, the issues would be submitted to the Court for resolution.
 
 
 8
 On May 2, 1979, pursuant to the stipulation of settlement, the parties presented to the Court a stipulation agreeing to a plan to meet the requirements of the original August 31, 1978 settlement. The District Court found the stipulated plan to be constitutional, fair, and equitable, and entered its approval on May 11, 1979.
 
 
 9
 The Suttons raised their objections before the District Court and assert them in this appeal. The Suttons claim that the plan is unconstitutional, illegal, involuntary, and otherwise improper. They also object to denial of class certification and denial of their petition to intervene in the Mendoza action (suit on behalf of the Mexican-American class) as representatives of a class opposing busing. In light of our disposition of the appeal, we do not reach the merits of these objections.
 
 
 10
 For the Suttons to have standing to prosecute this appeal, they must both satisfy the Article III constitutional requirements of federal court jurisdiction and be within the prudential limitations the judiciary has placed on entry to the federal courts.[1] Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). First, in order to satisfy Article III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the challenged action. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). This constitutional minimum requires that the plaintiff must have suffered or be threatened with a "distinct and palpably injury to himself." Warth v. Seldin at 501, 95 S.Ct. at 2206. The personal nature of the injury is central to the standing requirement. Second, the prudential limitations imposed by the judiciary prevent, in the absence of express authorization by Congress, bringing "questions of broad social import where no individual rights would be vindicated." Gladstone, Realtors, 441 U.S. at 100, 99 S.Ct. at 1608; Schlesinger v. Reservists to Stop the War, 418 U.S. 208, 217-27, 94 S.Ct. 2925, 2930-2935, 41 L.Ed.2d 706 (1974). Finally, grounds to establish standing will not be presumed. A party bringing suit must proffer specific facts which establish his actual or threatened injury; if those facts are not established, then neither is the party's standing to litigate. Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38-39, 44, 96 S.Ct. 1917, 1924-1925, 1927, 48 L.Ed.2d 450 (1976); Warth v. Seldin, 422 U.S. at 501-02, 508, 516-18, 95 S.Ct. at 2206, 2207, 2210, 2214-2215.
 
 
 11
 In order for the Sutton intervenors to properly claim standing to appeal, they must be threatened with "distinct and palpable" injuries to themselves, and these injuries must be as a result of the Phase II modifications to the Tucson desegregation plan.[2] Their suit may not proceed merely because they have ideological objections to deviation from a "neighborhood school policy." Further, the established threat of injury must be personal they may not raise the rights of others. Warth v. Seldin, 422 U.S. at 499, 95 S.Ct. at 2205.
 
 
 12
 There is no evidence that any of the Sutton intervenors meet this "personal stake" requirement. The Sutton brief does not allege that any of the six intervenor parents have any children who will be affected by the Phase II Plan. Nor does examination of all documents in the record filed by the Suttons after the plan was announced reveal any allegation of this or any other personal involvement with the plan. The Phase II modifications are limited in scope. The plan involves only 172 children being bused on a non-voluntary basis as a result of its implementation. It affects five elementary schools and three junior high schools, out of 90 elementary and junior high schools in the District. The fact that intervenors have children enrolled in the School District does not establish their direct injury, and any assumption of such injury would be unwarranted here.
 
 
 13
 Although the Sutton brief anticipates a challenge to standing, it does not claim, even informally, facts necessary to establish standing. The Suttons assert that portions of the Equal Educational Opportunities Act of 1974 (EEOA) grant them standing (20 U.S.C. §§ 1703, 1706, 1708). But no statute can confer standing where the constitutionally required "personal stake" is not present. Gladstone, Realtors, 441 U.S. at 100, 99 S.Ct. at 1608. The inability to demonstrate any personal impact of the Phase II modifications is of constitutional dimension, and thus nothing in the EEOA is of any help to the Suttons on the standing issue. Eastern Kentucky, 426 U.S. at 37-46 & n.22, 96 S.Ct. at 1923-1928.
 
 
 14
 The Suttons also claim that their participation as intervenors in the original trial enables them to pursue this appeal. This reliance is also misplaced. The Suttons may have been able to appeal the August 31, 1978 approval of the original stipulation of settlement, which they did not do, but the May 2, 1979 order they attempt to appeal here is separate and distinct.
 
 
 15
 There must be some showing that this order injures or threatens injury to the Suttons. With the appeal of the original settlement having been resolved, the Suttons have no special relation to this order by virtue of their status as intervenors. Not being parties to the settlement, they stand in the same place as any other parent in the School District, and must make the same showing in order to gain access to a federal court to contest the Phase II Plan.
 
 
 16
 The Suttons go on to assert that even if they have no standing, this Court should proceed to decide their objections in any case because the questions have been "placed squarely before this Court of Appeals." This has never been the law. The necessity of a live controversy with both parties personally interested in the result is the fundamental component of the "case or controversy" requirement. To follow the Suttons' suggestion would be to render an advisory opinion, and this has long been recognized as impermissible under the Constitution. Flast v. Cohen, 392 U.S. 83, 95-96, 88 S.Ct. 1942, 1950-1951, 20 L.Ed.2d 947 (1968).
 
 
 17
 In conclusion, the Sutton intervenors assert no facts which demonstrate that any of them are threatened with a personal injury as a result of the Phase II modifications to the Tucson desegregation plan, and we can find none. Thus, these parties lack the minimum personal stake in the action to establish their standing to maintain this appeal.
 
 
 18
 The Sutton appeal in Fisher is dismissed.
 
 
 19
 The Suttons have also filed an appeal in the Mendoza case from the District Court's June 8th order. They have appealed the orders of the District Court which denied their motions to intervene and to be certified as class representatives of a class composed of parents and students opposed to busing in Mendoza. We agree with the District Court that the motions are for the purpose of taking an appeal from the May 11th order approving the Phase II Plan. However, as discussed above, we find that the Suttons have no standing to appeal that order on its merits. We can perceive no other meritorious justification for the Suttons' requested intervention or class certification in Mendoza.
 
 
 20
 Therefore, the Sutton appeal in Mendoza is dismissed. DISMISSED.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The Sutton intervenors, appellants here, are six Anglo parents who oppose student transportation remedies to cure school desegregation. While a party need not meet all of the traditional standing requirements in order to intervene in an action, these become necessary if he is the only appellant:
 "(A) party possessing the standing to intervene does not automatically have the ability to appeal a decision which all other parties have decided not to appeal. In order to be able to appeal, the intervenor must have an 'appealable interest.' . . . Resolution of this question turns on traditional standing analysis."
 United States v. Imperial Irrigation District, 559 F.2d 509, 521 (9th Cir. 1977), modified on other grounds, 595 F.2d 524 (9th Cir. 1979), cert. granted, 444 U.S. 978, 100 S.Ct. 479, 62 L.Ed.2d 405 (1979) (citations omitted).
 
 
 [2]
 Only the Phase II modifications are at issue here. The Suttons did not appeal the August 31, 1978 approval of the original stipulation of settlement