The CONE CORPORATION, J.W. Conner & Sons, Inc., Cone Constructors, Inc., and Dallas 1 Construction & Development, Inc., Plaintiffs,

v.

HILLSBOROUGH COUNTY
and Frederick B. Karl,
Defendants.

No. 89–540–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 13, 1991.

Herbert P. Schlanger, Atlanta, Ga., Maxwell G. Battle, Jr., R. Michael Deloach, Maxwell G. Battle, Jr., P.A., Dunedin, Fla., for plaintiffs.

Claude H. Tison, Jr., Michael D. Malfitano, MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendants.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' SEPARATE MOTION TO DISMISS OR IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT FOR LACK OF STANDING

KOVACHEVICH, District Judge.

## I. STANDARD OF REVIEW

This cause is before the Court on Defendants' Motion for Summary Judgment filed February 11, 1991, memoranda in support thereof filed February 11, 1991 and February 13, 1991, and responses thereto filed March 14, 1991; and on Defendants' subsequent Motion to Dismiss, or in the Alternative for Judgment on the Pleadings or Summary Judgment for Lack of Standing filed July 16, 1991, memoranda in support thereof filed July 23, 1991, and responses thereto filed September 9, 1991.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact, when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994 996–97 (5th Cir.1979) (quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

In ruling on a motion to dismiss, a trial court is required to view the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). When ruling on a motion to dismiss for lack of standing particularly, the court must accept all material allegations of the complaint as true, and must construe the complaint in favor of the plaintiff. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (citing *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)).

## II. FACTS

In 1978, Hillsborough County initiated a Minority Business Enterprise (hereinafter "MBE") program requiring MBE participation in making bids on county construction projects. In 1984, after several workshops and meetings of the Board of County Commissioners at which, allegedly, the Commission was made aware of specific evidence of past and continuing discrimina-

tion against minority and women-owned businesses, Hillsborough County passed Resolution No. R88–0713.

The resolution's provisions were implemented through the issuance of an Administrative Order. The resolution and order developed a MBE law which required that a certain, predetermined percentage of the funds used for each construction contract let by Hillsborough County (or all of some construction contracts) be awarded to businesses whose eligibility for the "set-aside" was determined on the basis of the race, ethnic origin, or sex of its owners. The program was reviewed annually and revised nearly each year.

On April 18, 1989, Plaintiffs filed a complaint praying for declaratory and injunctive relief against Hillsborough County and Larry J. Brown (County Administrator) regarding further implementation of the MBE set aside program.[1] The complaint alleged that Hillsborough County Resolution No. R88–0713 evidenced a past and present pattern, practice, custom, and policy of discrimination in the construction industry which was unwarranted due to the lack of evidence of past or continuing discrimination in the construction industry in Hillsborough County. Any statistical under-representation, the complaint asserted, was due to general societal discrimination, discrimination in education, or discrimination by banks and other financial institutions. Further, it contended that the program was not narrowly tailored to remedy any past discrimination, nor were the quotas set rationally related to the effects of any past discrimination. Plaintiffs alleged that there were other less intrusive and less burdensome remedies available, and that the County had no compelling interest in using racial, ethnic, or sexual criteria in determining whether a construction bid was responsive. Plaintiffs claimed that because of their past, present, and future intent to perform construction work in Hillsborough County, each was injured in its business or property as a result of the program. Further, they claimed to bear a

disproportionate share of the burden of the program.

More particularly, each plaintiff alleged to have incurred injuries due to the forced allocation of a certain percentage of each bid price to MBEs. The alleged injuries included an increase in costs and risks, a decrease in profits, a limitation in freedom to choose subcontractors believed to have the ability to best complete work, and jeopardy to the quality of work and reputation. Further, Plaintiffs as a group asserted that the racially-conscious set-aside decreased their chances of getting any particular job.

In response, on May 16, 1989, Defendants answered the allegations denying a majority of the substantive claims. Specifically, the answer denied that Hillsborough County has engaged in a pattern and practice, or has had a custom and policy of discrimination in the construction industry and denied that it has encouraged and demanded discrimination in the award of contracts in the construction industry, or that it is presently engaged in discriminatory conduct. The answer denied that the County lacked evidence of past or continuing effects of discrimination in the award of construction contracts in Hillsborough County. It further denied that there was under-representation of MBEs in the construction industry in Hillsborough County, and asserted that there are many qualified MBEs in Hillsborough County historically excluded from participation in County contract business as a result of racial and ethnic discrimination committed by Plaintiffs and other contractors. The answer specifically denied that any generalized societal discrimination, discrimination in education, or by banks and other financial institutions was the cause of any difficulties MBEs may have in competing in the market. Also, it denied that the magnitude of the set-aside was not rationally related to any relevant statistics or a percentage of any relevant population group, or that the effects of discrimination had been eradicated by the use of racially-conscious MBE set-aside programs in years past, or that the program was overly broad. It further

1. Note: Defendant Frederick B. Karl was later substituted for Larry J. Brown.

denied that there were any non-race conscious remedies available as alternatives, or any less intrusive, less burdensome remedies; and denied that race, ethnic origin, or sex bore no rational relationship to the ability of an individual to engage in construction contracting in Hillsborough County. Finally, the answer denied Plaintiffs' allegations of injury.

Under the MBE program at issue, MBE participation quotas are set for each project by the Goal–Setting Committee (hereinafter "GSC"). These quotas are determined after the GSC reviews the number of MBE contractors available for participation in that particular project. Upon receiving county contract bids, the MBE section reviews the three lowest bids, including the bidders' executed minority business contracts. If the quotas are met, the MBE section awards the county contract to the lowest bidder. However, if the MBE quotas are not met, the MBE section reviews the bidder's good faith effort to respond to the quota. Non-responsive bidders are given the opportunity to submit protest letters to the Capital Projects Department, where the Protest Committee has the authority to reverse the MBE section's determination that the bid was unresponsive. If the committee upholds the determination of unresponsiveness, and the next lowest bid exceeds the unresponsive bid by 15% or $100,-000, the MBE quota is waived, and the unresponsive bidder is nevertheless awarded the county contract. If the next lowest bid does not exceed the unresponsive bid by 15% or $100,000, then the County Administrator has the discretion to award the contract despite the noncompliance.

On October 16, 1989, this court granted Plaintiff's Motion for Preliminary Injunction to enjoin Defendants' and their representatives, agents, and employees from enforcing, or taking any further action to implement Hillsborough County Resolution R88–1073. On March 1, 1990, the preliminary injunction was made permanent on the basis of this Court's February 13, 1990, order granting Plaintiffs' Motion for Summary Judgment. The next day, Defendants filed a Notice of Appeal to the Eleventh Circuit Court of Appeals regarding this Court's March 1, 1990, order.

## III. DISCUSSION

### A. Defendants Motion For Summary Judgment

In *Cone Corp. v. Hillsborough County,* 908 F.2d 908 (11th Cir.1990), this Court's order granting Plaintiffs' Motion for Summary Judgment was reversed. The Eleventh Circuit stated that, on a constitutional challenge, race conscious MBE programs are subject to strict scrutiny. *Id.* The strict scrutiny analysis requires that the MBE program's race conscious classifications be both necessary, and narrowly tailored to achieving a goal of remedying the effects of past discrimination. *Id.* The *Cone* court stated that to be necessary, there must be more than just an amorphous claim that there has been discrimination in a particular industry. *Id.* To be narrowly tailored, the court found, the plan must further some goal other than outright racial balancing, and the government must have considered race-neutral alternatives. *Id.* citing *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).

Accordingly, in order for Defendants to prevail on their Motion for Summary Judgment, the allegations and evidence must be sufficient for the MBE program to pass constitutional muster, when viewed in the light most favorable to Plaintiffs. Under the requisite strict scrutiny analysis, there must be more than an amorphous claim of past discrimination. There must be allegations of clear instances of past discrimination. In addition, there must be a showing that the plan furthers some goal other than outright racial balancing, and that the County considered race-neutral alternatives before implementing the program. Finally, Plaintiffs must have failed to rebut Defendants' prima facie showing.

In their Motion for Summary Judgment, Defendants urge that there is no genuine issue as to any material fact regarding whether racial discrimination existed in the

local contracting industry, that race-conscious measures were required to end that discrimination and to remedy its continuing effects, and that the MBE program was narrowly tailored to remedy that discrimination. Defendants further contend that Plaintiffs have no evidence with which to rebut Defendants' prima facie case of discrimination, and that Plaintiffs cannot show that the MBE program is overly broad or impermissibly burdensome. Thus, Defendants urge they are entitled to judgment as a matter of law.

Plaintiffs' response asserts that because Defendants have not produced any information upon which their proffered statistics are based, Plaintiffs are not able to attack the validity or significance of the disparities contained in them. Regarding whether the MBE program is narrowly tailored, Plaintiffs also contend that there remains factual questions regarding whether there were untried race-neutral programs available, whether the program is overly broad, and whether the program has achieved its purpose, and should therefore be discontinued.

On May 16, 1991, this Court entered an order on Defendants' Motion for Summary Judgment agreeing with Plaintiffs' contention that they had not had the opportunity to determine what documentary evidence they would need to rely upon to rebut Defendants' asserted prima facie showing, because Defendants had not yet produced the data allegedly used to establish the statistics. Without such information, this Court concluded that it would be impossible for any court to make an informed determination whether there had been a prima facie showing of discrimination. Thus, the Court ordered the Motion for Summary Judgment stayed until such time as Defendants produced the information requested, and Plaintiffs had adequate time to respond to the Motion for Summary Judgment.

In response to the Order dated May 16, 1991, Defendants produced approximately ten boxes of data. The abundance of files purportedly indicate a disparity in numbers between the number of minority contrac-

tors present in Hillsborough County, and the actual percentage of minority participation in the county's construction projects between the years 1982 and 1983. *Notice of Compliance with Order Dated 5/16/91 by Defendants.* These numerical disparities are probative of past discrimination when derived from a comparison of the number of qualified minority contractors in the particular geographic area, with the actual percentage of participation in that area's construction contracts. *Cone*, 908 F.2d at 915, *citing Croson*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).

Although probative of past racial discrimination, however, any numerical disparities are not conclusive. There remains a genuine issue of material fact for a jury to decide what weight, if any, the disparities should be given. Further, this Court notes that notwithstanding the amount of evidence of past discrimination currently presented, it must have been before Defendants at the time the MBE program was instituted. Regardless of the sufficiency of the statistical evidence presented at this time, there is also an issue regarding what evidence Defendants actually had before them at the time of the MBE program's implementation. Due to this Court's determination of the Defendants' subsequent Motion to Dismiss for Lack of Standing, however, it is unnecessary to further address Defendants' separate Motion for Summary Judgment beyond finding that material issues of fact remained to be addressed.

B. Motion to Dismiss or in the Alternative for Judgment on the Pleadings or Summary Judgment for Lack of Standing

While Defendants' Motion for Summary Judgment was pending, Defendants filed a separate Motion to Dismiss or in the Alternative for Judgment on the Pleadings or Summary Judgment for Lack of Standing dated July 16, 1991. As a basis for this motion, Defendants assert that several intervening decisions of the Court of Appeals made it "clear that the claims of injury made by Plaintiffs in this case are insufficient to confer standing." *Defendants' Motion to Dismiss or in the Alternative*

for Judgment on the Pleadings or Summary Judgment for Lack of Standing (hereinafter *"Defendant's Motion to Dismiss"*) pp. 5–6.

Defendants assert that Plaintiffs lack standing to institute and maintain this action because they have neither pleaded nor proved any injury to themselves resulting from the operation of Hillsborough County's MBE program. As grounds for their assertions, Defendants cite primarily to three recent opinions rendered in the Eleventh Circuit Court of Appeals. Namely, the cases are *Cone Corporation v. Florida Department of Transportation*, 921 F.2d 1190 (11th Cir.1991); *S.J. Groves & Sons Co. v. Fulton County*, 920 F.2d 752 (11th Cir.1991); and *Capeletti Brothers, Inc. v. Broward County*, 931 F.2d 903 (11th Cir. 1991) (affirming without opinion Justice Gonzalez' opinion reported at 738 F.Supp. 1415 (S.D.Fla.1990)). *See* discussion *infra*.

Plaintiffs' response initially attempts to differentiate the cases cited by Defendants on the grounds that they only stand for the narrow proposition that in order for a contractor to have standing, the defendant must identify specific contracts on which a race-conscious requirement was unconstitutionally imposed, and identify a specific injury flowing from that imposition. *Plaintiff's Response to Defendants' Motion to Dismiss*, p. 2. Secondly, Plaintiffs assert that their standing is based on the unconstitutionality of race-conscious goals imposed on particular projects, and particular injuries suffered by each plaintiff on particular projects. Plaintiffs submitted several affidavits in support of these contentions. *Id.*

Finally, Plaintiffs argue on the basis of several United States Supreme Court opinions, that even an " 'identifiable trifle' of injury is enough for standing to fight out a question or principle." *Plaintiffs' Response to Defendants' Motion to Dismiss* (citing *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). Plaintiffs further cite to several other United States Supreme Court opinions which granted standing on allegations of even more tenuous injury than the case at bar.

*See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Plaintiffs also contend that Defendants' assertions are in contrast to the Eleventh Circuit's holdings in more "traditional civil rights cases." *Plaintiff's Response to Defendants' Motion to Dismiss*, p. 16 note 4 (citing *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417 (11th Cir.1984), which held that "irreparable injury may be presumed from the fact of discrimination").

### 1. United States Supreme Court View

This Court recognizes the Supreme Court's traditional view of a comparatively liberal standing requirement in cases where a violation of the Equal Protection clause is alleged on the basis of discriminatory practices, both in favor of minority groups and in favor of majority groups. This Court also acknowledges the laudable goal of facilitating equal protection through a more liberal standing requirement when there are strong governmental interests at issue.

Illustrative of the Supreme Court's traditional stance are numerous cases decided in the affirmative action context. In *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), the Supreme Court defined the standing requirement as the ability of the plaintiff to demonstrate *any injury* to himself that is likely to be redressed by a favorable decision of his claim. In that case, the plaintiff was denied admission to a medical school which reserved 16 out of 100 places for disadvantaged minority students. The court granted standing even though the plaintiff could not show he would have been admitted absent the special admissions program. The Supreme Court stated that it was sufficient that the program precluded him from competing for all 100 places available solely because of his race. *Id.* (emphasis added).

Also illustrative is *Hunter v. Erickson*, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969). There, the plaintiff was in the market for a new house, but a real estate agent would not show her certain houses because the owners did not want to sell to blacks. Due to a city ordinance requiring referendum approval before a state fair housing statute was available, the plaintiff had no recourse. The *Hunter* court found standing even though the plaintiff could not show she would have bought a house absent the alleged discrimination.

In a similar vein, the Supreme Court has held that a plaintiff's interest in a contingent contract is sufficient to create standing. In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), a real estate developer and individual plaintiff had standing to sue for a 14th Amendment violation when a local authority refused to rezone an area, even though the developer could not show the development would be built in the absence of the zoning legislation. Further, the *Village of Arlington Heights* court found that the individual plaintiff's assertion that his quest for housing nearer his employment had been thwarted by the officials' refusal to rezone was also a sufficient allegation of injury for standing purposes. More specifically, the Supreme Court in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), held that the plaintiffs must have a personal stake in the outcome in order to have standing.

Under this analysis, because Plaintiffs here have alleged some specific injury in the form of increased costs and lost profits, as well as a particular affect on their past, present, and future intent to perform construction work in Hillsborough County, it is arguably unnecessary for them to show they would have been awarded other specific contracts absent the program requirements. Given the Supreme Court cases on this issue alone, the allegations in the complaint and supporting affidavits should be adequate.

In addition, the Supreme Court has held that the mere equal application of a racial classification is an insufficient allegation to preclude standing. In *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), the defendants alleged that because an anti-miscegenation statute was applied equally to blacks and whites alike, it was not violative of the Constitutional Equal Protection clause. The *Loving* court held, however, that mere fact that the statute was equally applied was insufficient to remove it from the 14th Amendment's proscription against invidious racial discrimination.

Similarly, in *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), the court held that the plaintiffs, who were members of an environmental group, had standing when they allegedly would be directly harmed in their use of natural resources by the defendant's actions. The court reasoned that it was sufficient to create standing for the plaintiff to allege that he has been or will be perceptibly harmed. The *SCRAP* court held that standing is not limited to those who can allege economic harm, and that standing will not be denied simply because many people suffer the same injury.

Thus, under the Supreme Court's analysis alone, Plaintiffs in the case at bar would probably have standing regardless of whether the MBE program applies equally to MBEs and non-minority businesses in the construction industry alike. Further, the injury alleged may be sufficient whether limited to economic injury or not, and standing would not be denied merely because many contractors suffered the same injury.

Finally, the United States Supreme Court has historically recognized standing where the plaintiff's interest in the controversy is even more tenuous than in the case at bar. Several cases are illustrative. In *Wygant v. Jackson Board of Education*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986), the plaintiffs were non-minority teachers laid off of their jobs, allegedly because of an unconstitutional policy of preferring minorities in lay-off decisions. The *Wygant* court held that a teacher's interest in her job was sufficient to create standing, ab-

sent a showing that she would have kept her job without the minority preference. In *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the court found the gist of a challenge to standing to be whether the plaintiffs have alleged a personal stake in the outcome of the controversy. There, the court found that a county resident allegedly qualified to vote had a sufficient stake in the outcome to create standing to sue for a declaratory judgment that a state apportionment statute deprived the plaintiff of equal protection. Further, in *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), the court found that a Virginia resident had standing to sue for a declaratory judgment to have a minimal poll tax declared unconstitutional; and in *Brown v. Board of Education*, the court found that minor negro plaintiffs had standing to sue to obtain admission to public schools on a non-segregated basis, even though other desegregated schools were available to them.

Given the surfeit of Supreme Court cases on the subject of standing in the affirmative action context, as well as when other constitutional rights are at issue, it is difficult to envision that the non-minority contractors in the case at bar lack standing to sue for the allegedly unconstitutional MBE program. The court notes that if Plaintiffs in this action are unable to bring such an action on allegations of an impact on their past, present, and future intent to perform construction work in Hillsborough County, and specific instances of economic loss, it is unlikely that anyone will be able to bring such an action. The application of the constitutional standing requirement, the Supreme Court has held, should not be a mechanical exercise. *Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988). Thus, the Court empathizes with Plaintiffs' dilemma.

Nevertheless, the United States Supreme Court has not specifically addressed the standing requirements for a challenge to the constitutionality of an MBE program such as the one at bar, in cases where a contractor has been awarded a county contract upon submission of the lowest bid.

The two most recent cases concerning MBE programs did not comprehensively address the issue of standing in this context. *See City of Richmond v. J.A. Croson*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989); *Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). The Eleventh Circuit, on the other hand, has provided for specific standards for determining when a contractor in such a situation has standing.

### 2. The Eleventh Circuit View

■ When determining whether plaintiffs such as those at bar have standing, the Eleventh Circuit has held that the court must make its determination by assessing the allegations in the complaint. *Cone Corporation v. Florida Department of Transportation*, 921 F.2d 1190 (11th Cir. 1991), citing *Warth v. Seldin*, 422 U.S. 490, 510, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). However, if the court has facts before it which go beyond the complaint, it may also consider those facts. *Id.* citing *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109 n. 22, 99 S.Ct. 1601, 1613 n. 22, 60 L.Ed.2d 66 (1979). Further, in the event the plaintiffs have failed to provide sufficient evidence of past injury, the court may analyze the MBE program itself to determine if there has been a denial of equal protection and an imminent threat of future injury. *Cone*, 921 F.2d at 1206–09. Thus, following the Eleventh Circuit guidelines, even if Plaintiffs in the case at bar have not alleged clear instances of past discrimination in their complaint, this Court may consider any instances of past injury Plaintiffs have asserted in their Memorandum in Opposition to Defendants' Motion to Dismiss, or look to the Hillsborough County MBE program itself for such injury.

■ Moving to the merits of the standing issue, the Eleventh Circuit reasoning begins with the fundamental principal that in order to have the standing necessary to challenge the constitutionality of any act, the court must consider both the irreducible constitutional requirements of standing, and the court's prudential considerations.

*S.J. Groves & Sons Co. v. Fulton County,* 920 F.2d 752, 757 (11th Cir.1991). The *Groves* court defined the irreducible constitutional requirements to be that the plaintiff suffered an actual injury, or is faced with the imminent threat of injury which is traceable to the challenged conduct, and that a favorable decision would likely redress that injury. Defendants in the case at bar base their objection to Plaintiffs standing primarily in the sufficiency of Plaintiffs' allegations of past injury.

In order to establish an imminent threat of future injury, a requirement for injunctive relief (*see Cone,* 921 F.2d at 1203), the Eleventh Circuit has held that the plaintiff must present "specific, concrete facts" establishing that the MBE program will result in a "demonstrable, particularized injury" to the plaintiffs, and a fairly traceable nexus between the program and the threatened equal protection violation. *Id.* at 1204, citing *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). The Eleventh Circuit has recognized that this injury may be established by demonstrating the existence of two types of evidence: 1. specific examples of past injury in which the plaintiffs were denied equal protection because of the MBE program, or 2. the existence of "statutes, regulations, settled policies, judicial decisions, and other rules which establish the official's authority, mandate the acts that he must perform, and circumscribe his discretion, if any." *Cone,* 921 F.2d at 1205, n. 48.[2]

In *Cone,* the court held that since the contractors failed to show they were denied a contract on the basis of their race, they lacked standing. There, the complaint did not point to any specific contract the plain-

tiffs had lost because of their race, and the court emphasized that even though nothing in the program required the secretary to deny equal protection, and provided for administrative and judicial escape hatches, the plaintiffs lacked standing. The standing requirement, the court held, was based on a need for "concrete adverseness which sharpens presentation of issues upon which the court depends for illumination of different constitutional questions." *Id.*

This Court recognizes that Plaintiffs in this case may represent their interests in a very adversarial manner. Plaintiffs have historically bid on county contracts and express the intention to do so in the future. They surely have a strong and demonstrable economic interest in the outcome of this litigation. They have also pointed to specific contracts in which increased costs have been incurred as a direct result of having to sub-contract work in order to comply with the MBE program requirements, which would otherwise have been done in-house. Numerous Supreme Court cases have held that a failure to point to a specific contract lost as a result of race is not fatal to the plaintiff's standing. *See, e.g., Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Hunter v. Erickson,* 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969); and discussion *supra.*

The Eleventh Circuit has specifically held, nonetheless, that the requisite demonstration of past injury necessary in this context may not be based upon a mere showing of lost potential profits, or the lost opportunity to compete with other contractors. *See S.J. Groves & Sons Co.,* 920 F.2d

---

**2.** The *Cone* court distinguished *Fullilove v. Klutznick,* 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980), on the basis that the *Fullilove* court was confronted with clear examples of past discrimination where contractors were first awarded contracts, but due to the MBE program's requirements, were subsequently denied the contracts; and on the basis that the MBE program was part of the Public Works Employment Act of 1977. The combination of these two factors, the court reasoned, made it likely that the plaintiffs would be injured in the future. *Cone,* 921 F.2d at 1208, n. 56.

In a similar ruling, the *Capeletti* court distinguished *City of Richmond v. J.A. Croson,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989), on the grounds that there, although the plaintiff had not lost a contract in the past, it had applied for a waiver of the MBE participation requirements and was denied this waiver. *Capeletti Bros., Inc. v. Broward Co.,* 738 F.Supp. 1415, 1417–18 (S.D.Fla.1990), aff'g 931 F.2d 903 (11th Cir.1991).

at 757–59; *Capeletti Brothers, Inc. v. Broward Co.*, 738 F.Supp. 1415, 1416–17 (S.D.Fla.1990), aff'g 931 F.2d 903 (11th Cir. 1991). Thus, Plaintiffs' allegations of lost profits would not be sufficient to create standing under the Eleventh Circuit reasoning.

In *Groves*, the Eleventh Circuit further held that in order to have standing, a "litigant must have suffered or be in imminent danger of suffering distinct and palpable injury." The alleged injury incurred through lost profits must be based upon the allegation that the plaintiff lost not only profits, the *Groves* court held, but the contract itself due to the MBE program. *Groves*, 920 F.2d at 758. The *Groves* court found that since the plaintiff contractor was not denied a contract because of the MBE program at issue, nor had bid on a contract subject to the program, he did not meet this requisite showing of injury, and thus did not have standing to sue.

In the case at bar, Plaintiffs have alleged increased costs on several specific contracts obtained which are subject to the MBE program requirements, not that they have lost specific contracts due to the MBE program. While this is very arguably a "distinct and palpable injury," the Eleventh Circuit precedent is clear that the mere alleged economic injury suffered by contractors who incur the additional costs of MBE participation is an insufficient allegation of injury to create standing.

The Eleventh Circuit has reasoned that this type of injury is insufficient because both MBE and non-MBE bidders are subject to the program requirements. *See Capeletti, supra.* In *Capeletti*, the court held that the injury alleged by contractors who had bid or intended to bid on county projects was insufficient to create standing, because the injury was not individualized, as all the contractors and subcontractors who wished to bid on public projects were required to adhere to the program requirements. *Capeletti*, 738 F.Supp.

1415. The court held that since the plaintiffs failed to specify any particular project causing them harm, they lacked standing to object to the constitutionality of an MBE program.

While Plaintiffs at bar allege injuries analogous to those in *Capeletti*, this Court notes that the *Capeletti* court did not address other Supreme Court holdings which have held that equal application of a statute based on discrimination does not mean that the plaintiff lacks standing. *See, e.g., United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); and discussion *supra.*

Finally, the *Capeletti* court found that the mere allegation of economic injury suffered by contractors who incur the additional costs of MBE participation is not a sufficient allegation of injury to create standing, because it is the county who ultimately absorbs these costs, not the individual contractors.[3] The increased costs and risks, decreased profits and freedom to choose subcontractors, the court reasoned, were all allegations of economic damage which could be factored into the bid. Similarly, the *Groves* court held that there is no injury suffered through the alleged denial of equal competition for county contracts, because the MBE program's participation requirements are universal and must be considered by every contractor that submits a bid for a county construction project. *Groves*, 920 F.2d at 758.

This Court notes, however, that if Plaintiffs had factored the added costs of compliance with the MBE program requirements into their bids, then they might not have been awarded the contracts. Although actual MBEs may be subject to the program requirements, because of their status and the design of the program, they may be able to incur less costs than a non-MBE business in complying with the program. Nonetheless, the Eleventh Circuit precedent is clear, and this Court feels

---

**3.** The *Capeletti* court noted that the plaintiffs were in fact objecting to the MBE program on the basis of their status as taxpayers, but without demonstrating any exception to the general rule that there is no standing based merely on the status of a taxpaying citizen. *Capeletti*, 738 F.Supp. at 1417.

compelled to follow it, absent a very clear direction to the contrary.

### 3. Plaintiffs' Allegations of Injury

Plaintiffs cite six specific contracts in their Memorandum in Opposition to Defendants' Motion to Dismiss which purport to demonstrate sufficient injury for the Court to find that they have standing to challenge the constitutionality of Hillsborough County's MBE program.[4] This Court will examine the allegations surrounding each contract individually to determine if Plaintiffs meet the standing requirements provided by the Eleventh Circuit.

#### 1. PC–108–86

Plaintiffs allege they submitted the lowest bid to Hillsborough County and were awarded this contract. However, due to the MBE requirements, Plaintiffs claim they were forced to subcontract work to a minority subcontractor, when they had the capability to perform the subcontracted work in-house. As a result of the MBE requirement, Plaintiffs contend they were denied the profits they would have received if not required to subcontract the work.

#### 2. PC–034–87

Plaintiffs allege they submitted the lowest bid to Hillsborough County and were awarded this contract. However, in order to meet the MBE requirements, Plaintiffs maintain they were forced to use a subcontractor whose bid was approximately $15,-000.00 more than a bid they had received from a non-qualifying subcontractor. Consequently, Plaintiffs contend their expected profit was reduced by this amount.

#### 3. PC–624–89

Plaintiffs allege they submitted the lowest bid to Hillsborough County and were awarded this contract. However, in order to comply with the MBE program requirements, Plaintiffs maintain they were again forced to subcontract with an MBE subcontractor who did not submit the lowest bid.

Plaintiffs argue that this resulted in an additional cost of $85,970.00, which reduced Plaintiffs' expected profit by that amount.

#### 4. PC–669–89

Plaintiffs allege they submitted the lowest bid to Hillsborough County and were awarded this contract. However, in order to comply with the MBE program requirements, Plaintiffs maintain they were forced to subcontract to an MBE subcontractor whose bid was $15,812.00 higher than the next lowest bid. Consequently, Plaintiffs argue, they incurred an additional cost in the same amount, and were denied this expected profit.

#### 5. PC–727–90

Plaintiffs allege they were awarded this contract during the period in which the injunction entered by this Court was in effect. However, when the Eleventh Circuit Court of Appeal vacated this Court's order granting the injunction, Hillsborough County required Plaintiffs to increase their MBE participation from 5.1% to 24.8% in order to meet the MBE program requirements. Consequently, Plaintiffs argue, they subcontracted with another MBE subcontractor at an additional cost of $3,690.00, and were denied an expected profit in the same amount.

#### 6. PC–737–90

Plaintiffs did not allege any facts concerning this contract.

▮▮ Although Plaintiffs have identified six specific contracts through which they allegedly suffered an injury, they were not denied any of the contracts on the basis of their race, or any other reason. All of the contracts identified by Plaintiffs have allegedly resulted in the injury of additional costs and the subsequent loss of potential profits. This economic injury is insufficient to provide Plaintiffs standing to challenge the constitutionality of Defendants' MBE program under the Eleventh Circuit's

---

**4.** Specifically, these contracts were PC–108–86, PC–034–87, PC–624–89, PC–669–89, PC–727–90, and PC–737–90.

analysis. *See Cone Corp. v. Florida Department of Transportation*, 921 F.2d 1190 (11th Cir.1991); *S.J. Groves & Sons Co.*, 920 F.2d 752, 758 (11th Cir.1991); *Capeletti Brothers, Inc.*, 738 F.Supp. 1415 (S.D.Fla.1990), aff'g 931 F.2d 903 (11th Cir. 1991); and discussion *supra*.

 Additionally, Plaintiffs have not identified a particular injury that is not characteristic of the Hillsborough County construction business as a whole. Plaintiffs' voluntary cessation of competitive bidding for county contracts is a result of universal MBE requirements that must be complied with by all contractors who submit bids for Hillsborough County contracts. Accordingly, even if Plaintiffs had identified the specific injury of the denial of a contract, rather than just the economic injury of additional costs and lost profits, there is still insufficient threat of future injury under the Eleventh Circuit precedent, because this injury is not a "particularized injury." *See Cone*, 921 F.2d at 1204, and discussion *supra*.

 The Court notes that there is some question as to whether or not sufficient differences arise regarding the contract numbered PC–727–90, so as to render it inconsistent with the standard provided by the Eleventh Circuit. Plaintiffs were awarded the PC–727–90 contract during the period this Court's injunction was in effect, but were later forced to conform to the MBE program requirements when the injunction was lifted. Although Plaintiffs were not denied the contract, they were forced to subcontract with an MBE subcontractor instead of the subcontractor with whom they originally contracted to perform certain work. Upon consideration, however, the Court finds that while such a contract presents a unique situation unsettled by either Supreme Court or Eleventh Circuit particularly, the precedent requires the conclusion that the difference is not sufficient to confer standing on that plaintiff.

Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment (Docket Number 84) be denied, and Motion to Dismiss or in the Alternative for Judgment on the Pleadings or Summary Judgment for Lack of Standing (Docket Number 104) be granted, and that the Clerk of the Court be directed to enter judgment for Defendants based upon Plaintiffs' lack of standing.

Done and Ordered.