983 F.2d 197
 60 Empl. Prac. Dec. P 42,055, 61 USLW 2509
 The CONE CORPORATION; J.W. Conner & Sons; Bulger
Contracting Co.; Boyce Company; S & E
Contractors, Inc.; Woodruff & Sons,
Inc.; Suncoast Utility
Contractors
Association,
Plaintiffs-
Appellants,
Cone Constructors, Inc.; Dallas 1 Construction &
Development, Inc., Plaintiffs,
v.
HILLSBOROUGH COUNTY; Frederick B. Karl, Defendants-Appellees.
 No. 91-4194.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 8, 1993.
 
 Herbert P. Schlanger, Atlanta, Ga., for plaintiffs-appellants.
 MacFarlane, Ferguson, Allison & Kelly, Claude H. Tison, Jr., Tampa, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before KRAVITCH, Circuit Judge, GODBOLD and OAKES*, Senior Circuit Judges.
 OAKES, Senior Circuit Judge:
 
 
 1
 This case comes before the court on an appeal from a grant of summary judgment for the defendant, Hillsborough County, Florida. The United States District Court granted the county's motion after concluding that the nonminority general contractor plaintiffs-appellants had no standing to challenge, on equal protection grounds, the county's minority business enterprise program (MBE). 777 F.Supp. 1558. As appellants have alleged no injury in fact, we affirm.
 
 BACKGROUND
 
 2
 This court has reviewed the details of the county's plan before, in Cone Corp. v. Hillsborough County, 908 F.2d 908, 909-11 (11th Cir.), cert. denied, 498 U.S. 983, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990), when it reversed the district court's grant of summary judgment to the contractors. For the purpose of this appeal, we review the facts only briefly.
 
 
 3
 Hillsborough County, which includes the city of Tampa, Florida, instituted its first MBE program in 1978 in order to be eligible for federal funding for a variety of construction projects. Initially, the county instituted a voluntary program. In 1984, after studying the effects of the voluntary program for six years, it concluded that more serious measures would be needed to increase minority participation in county contracts.
 
 
 4
 The mandatory program challenged by the appellants was instituted in 1988. It does not include quotas or set-asides for minority contractors or subcontractors, nor does it grant any bidding preferences to minorities. Rather, it requires the county to set goals for minority participation in particular contracts before bidding. No goals are included in the bid specifications on any contract unless at least three minority subcontractors in the area are available and capable of doing the work. A contractor whose bid does not include the requisite MBE participation may nonetheless win the contract if it can demonstrate a good-faith effort at compliance, or if its bid is substantially lower than the lowest responsive bid. Minority general contractors who plan to complete at least 51% of the work on a project themselves need only meet 50% of the goal for minority subcontractor participation.
 
 
 5
 The key point for purposes of this case is that all contractors, both minority and nonminority, must include minority participation where it is feasible, and must demonstrate a good-faith effort to find minority subcontractors where they are available. There is only one provision in the county's resolution which treats minority and nonminority general contractors differently: the reduction in the MBE goal for minority general contractors who do more than 50% of the work themselves. Appellants have alleged no injury stemming from the operation of this provision.
 
 
 6
 In 1989, the contractors filed a complaint seeking injunctive relief and a declaratory judgment that the program created an unconstitutional racial preference in violation of the equal protection clause of the Fourteenth Amendment. Appellants alleged three types of injury: (1) that they were deterred by extra risk and cost from bidding on county projects, thus foregoing profits; (2) that they lost profits on contracts they were awarded because they had to use minority subcontractors who were not the lowest bidders, rather than using low bidding nonminority subcontractors or their own workforce; and (3) that they expended money complying with the county's requirement that they make good faith efforts to meet the MBE goals.
 
 
 7
 The district court, after a brief hearing, granted a preliminary injunction barring continued enforcement of the program. Cone Corp. v. Hillsborough County, 723 F.Supp. 669 (M.D.Fla.1989). In 1990, the district court granted summary judgment for the contractors and entered a final order making the preliminary injunction permanent. Cone Corp. v. Hillsborough County, 730 F.Supp. 1568 (M.D.Fla.1990). This court reversed. Cone Corp. v. Hillsborough County, 908 F.2d 908 (11th Cir.1990).
 
 
 8
 Following this court's reversal of the summary judgment motion for the contractors, and after further discovery, the county filed a summary judgment motion, arguing both that it should prevail on the merits and that the contractors had failed to allege any injury sufficient to confer standing. The county also filed, in the alternative, a motion to dismiss for lack of standing. The district judge granted both motions, concluding that precedents of this court compelled a finding that the contractors had no standing, although she expressed doubts as to whether these cases were consistent with the Supreme Court's standing precedents.
 
 
 9
 The district court had jurisdiction under 28 U.S.C. § 1331 (1988). This court has appellate jurisdiction under 28 U.S.C. § 1291 (1988).
 
 DISCUSSION
 
 10
 Under Article III of the Constitution, the appellant contractors have no standing to challenge the county's MBE program unless they can allege an injury which is traceable to the program and redressable by court action. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The district court properly rejected the contractors' claims for failure to allege an injury in fact.
 
 
 11
 In an effort to satisfy the injury-in-fact requirement, appellants claim that they have absorbed extra costs and suffered a loss of profits by complying with the program's requirements, and that they will lose future profits because they are deterred by extra risks and costs from competing for contracts with Hillsborough County.
 
 
 12
 As this court's previous cases have made clear, appellants cannot allege an economic injury from the operation of an MBE program unless that program requires them to compete on an uneven economic playing field or bars them from competing for certain contracts. Northeastern Fla. Chapter of the Assoc'd Gen. Contractors of Am. v. City of Jacksonville, 951 F.2d 1217 (11th Cir.), cert. granted, --- U.S. ----, 113 S.Ct. 50, 121 L.Ed.2d 20 (1992); Cone Corp. v. Fla. Dep't of Transp., 921 F.2d 1190 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991); S.J. Groves & Sons Co. v. Fulton County, 920 F.2d 752 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2274, 114 L.Ed.2d 725 and cert. denied, --- U.S. ----, 111 S.Ct. 2893, 115 L.Ed.2d 1057 (1991); Capeletti Bros. v. Broward County, 738 F.Supp. 1415 (S.D.Fla.1990), aff'd without op., 931 F.2d 903 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991). Other circuits use the same criteria to find standing in challenges to MBE programs. See, e.g., O'Donnell Const. Co. v. District of Columbia, 963 F.2d 420, 423 (D.C.Cir.1992); Coral Const. Co. v. King County, 941 F.2d 910, 930 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 875, 116 L.Ed.2d 780 reh'g denied, --- U.S. ----, 112 S.Ct. 1307, 117 L.Ed.2d 529 (1992). Only if the MBE program discriminates in one of these ways does it cause injury to contractors. Competition on an uneven playing field--where the rules in effect operate to favor one bidder over another--causes injury by forcing contractors to lower their bids to compete with those granted bidding advantages. E.g., Coral Const. Co., 941 F.2d at 930 (MBEs could win contract with bid 5% higher than lowest bid). Set-aside programs may cause injury by barring potential bidders from competing for certain contracts. Cf. Regents of the Univ. of Cal. v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (loss of opportunity to compete for some spaces in medical school class may be an injury). However, when a program neither bars competition for contracts, nor forces competition under rules favoring some bidders over others, the contractors do not lose profits. To the extent that their costs are increased, they are free to factor these costs into their bids.
 
 
 13
 Appellants allege no economic injuries whatsoever. Their allegations consist of bald assertions that they have lost profits because they did not factor increased costs into their bids. However, Hillsborough County has not cut into the contractors' profit margin; rather, it has mandated the use of certain supplies--the work of minority subcontractors--even if they are more expensive than the alternatives, and even if obtaining them increases overhead costs. The effect on general contractors is no different from that of requiring them to use better quality plywood, to improve their safety standards, or to beef up their recordkeeping practices. Indeed, "[a]ccepting as true that the [MBE] program increases costs, there is no injury to the bidders or their profits. It would be the irrational businessman who did not factor such costs into his bid." Capeletti Bros., Inc., 738 F.Supp. at 1417. There is simply no reason to believe that the appellants will lose profits as a result of the operation of this program if, like their competitors, they factor these costs into their bids. If they choose not to do so, that is a business decision, not an injury.
 
 
 14
 Indeed, it is Hillsborough County, not the appellants, which incurs extra costs on individual contracts whenever contractors comply with its bidding requirements by hiring subcontractors who are not low bidders. Because the MBE program was instituted in order to comply with federal grant requirements, as discussed above, both the county and the contractors benefit from the availability of federal funding for county projects. Appellants actually may have gained funds as a result of the county's actions: had the county refused to comply with the federal grant requirements, thereby foregoing federal funding, it would not have as much money to spend on contractors' services.
 
 
 15
 Appellants suggest, as did the district court, that Supreme Court standing precedents require a different result. They claim that the Supreme Court's standing requirements in equal protection cases are much more flexible than this court's previous cases have suggested, and that all that is required is an "identifiable trifle" of injury, for which point they cite United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973), Pennell v. City of San Jose, 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (standing not a "mechanical exercise," quoting Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)), and Village of Arlington Heights v. Metro. Housing Dev't Corp., 429 U.S. 252, 262-63, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977) (noneconomic injury to contractors who wished to build low-income housing may confer standing). However, unlike the student members of SCRAP, who alleged that they would suffer harm from the degradation of the environment should the Interstate Commerce Commission raise freight rates in a manner which might discourage the use of recycled goods by increasing their costs, appellants have alleged no injury to themselves at all. Appellants' use of the other cases is similarly flawed. While they cite to a broad range of cases involving injuries tenuously connected to the challenged action, or which would occur only if a series of additional events took place, they cite to no case in which the Supreme Court has ruled that plaintiffs had standing despite the failure to allege that they had suffered an injury in fact. See also Laurence H. Tribe, American Constitutional Law 111-29 (2d ed. 1988).[1]
 
 
 16
 The contractors also claim that they must have standing, because otherwise no one would be in a position to challenge the program. First of all, it is by no means clear that no one else could challenge the Hillsborough County program. More importantly, lack of an appropriate plaintiff would not suffice to confer standing on appellants, or on anyone else, simply because they wish to challenge a government action. Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974).
 
 
 17
 Finally, the county urges us to reach the merits of this case despite the lack of standing, so as to forestall future challenges to its program. Because appellants have no standing, there is no justiciable controversy before us. Consequently, we reject this suggestion.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 Appellants rely in part on Brown v. Board of Education, 347 U.S. 483, 486 n. 1, 74 S.Ct. 686, 687 n. 1, 98 L.Ed. 873 (1954) to support their argument that the Supreme Court would grant them standing. They suggest that the Brown plaintiffs were afforded standing to challenge segregation in public schools even though substantially equal unsegregated schools were available to them, citing footnote one of the Brown opinion
 Appellants have misread the Brown footnote, which indicates only that in the Topeka case, students were segregated in elementary schools, but not secondary schools, not that unsegregated schools were available to the Topeka plaintiffs. The students challenging that city's mandatory segregation policy were elementary school students. In all of the other cities, the segregation was complete. Brown has nothing to do with this case.