The CONE CORPORATION; J.W. Conner & Sons; Bulger Contracting Co.; Boyce Company; S & E Contractors, Inc.; Woodruff & Sons, Inc.; Suncoast Utility Contractors Association, Plaintiffs–Appellants,

Cone Constructors, Inc.; Dallas 1 Construction & Development, Inc., Plaintiffs,

v.

HILLSBOROUGH COUNTY; Frederick B. Karl, Defendants–Appellees.

No. 91–4194.

United States Court of Appeals, Eleventh Circuit.

Oct. 29, 1993.

Herbert P. Schlanger, Atlanta, GA, for plaintiffs-appellants.

MacFarlane, Ferguson, Allison & Kelly, Claude H. Tison, Jr., Tampa, FL, for defendants-appellees.

Appeal from the United States District Court for the Middle District of Florida.

Before KRAVITCH, Circuit Judge, GODBOLD and OAKES *, Senior Circuit Judges.

PER CURIAM:

In light of the Supreme Court's ruling in *Northeastern Florida Chapter of the Assoc'd Gen. Contractors of Am. v. City of Jacksonville*, —— U.S. ——, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), this court, sitting en banc, has asked us to reconsider our original opinion in this case, *Cone Corp. v. Hillsborough County*, 983 F.2d 197 (11th Cir.), *vacated and reh'g en banc granted*, 993 F.2d 784 (11th Cir.1993). The en banc opinion is published at *Cone Corp. v. Hillsborough County*, 995 F.2d 185 (11th Cir.1993) (per curiam).

The *Northeastern Fla.* Court, addressing an affirmative action set-aside program for contractors' services, indicated that

> [w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit. And in the context of a challenge to a set-aside program, the "injury in fact" is the inability to compete on an equal footing in the bidding process, not the loss of a contract. To establish standing, therefore, a party challenging a set-aside program like Jacksonville's need only dem-

onstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis.

*Northeastern Fla.*, —— U.S. at ——, 113 S.Ct. at 2303 (citations omitted).

■ Similarly, this case involves a challenge by general contractors to an affirmative action plan, though not a set-aside program like the one challenged in the *Northeastern Fla.* case. In our original opinion, we stated that the plaintiffs had failed to allege any injury because the provisions of the affirmative action plan they challenged did not treat them differently from nonminority general contractors. Rather, we noted, these provisions required both minority and nonminority general contractors to seek the services of minority subcontractors. To the extent that the plaintiffs' challenges to the county's affirmative action plans deal with such provision, they do not allege that the program produces any "inability to compete on an equal footing in the bidding process," in the terms of the *Northeastern Fla.* case, —— U.S. at ——, 113 S.Ct. at 2303, or "competition on an uneven playing field," in the words of our original opinion. Such unequal competition, as we noted in our original opinion, can cause harm whether or not those forced to compete on less advantageous terms gain the benefit sought. For example, unequal competitive standards in the contracting context can require successful bidders to shave their profit margins to compete with those given an advantage. *Northeastern Fla.* does not change our analysis on this point, but indeed reinforces it.

To the extent that our description of the program and the injuries alleged by the plaintiffs was accurate, then, we stand by the logic of the original opinion. As a result, we affirm the district court's dismissal of all claims dealing with provisions of the affirmative action program which treat minority and nonminority general contractors alike, because they do not produce competition on an uneven playing field.

■ However, in reviewing the case, we believe we may have been too hasty in dis-

* Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designa- tion.

missing the challenges to the one provision of Hillsborough County's affirmative action plan that does treat minority and nonminority general contractors differently: the reduction in the minority business enterprise (MBE) goal for minority general contractors who do more than 50% of the work themselves. In our original opinion, we stated that "[a]ppellants have alleged no injury stemming from the operation of this provision." However, while the complaint does not allege any such injury specifically, it could be construed to allege such an injury generally. The amended complaint, in fact, is something of a bare bones complaint which describes no injuries with particularity. Rather, it generally alleges injuries to the plaintiffs' "business and property" as the result of the general operation of the county's affirmative action program, Amended Complaint ¶ 52, and alleges that nonminority general contractors including the plaintiffs "bear a disproportionate share of the burden imposed by" the program, *id.* ¶ 53. Elsewhere in the complaint, the plaintiffs describe the provisions of the program, including the one treating minority and nonminority general contractors differently. In addition, the appellants submitted affidavits in response to the county's motion to dismiss detailing particular situations in which, they claimed, they had suffered injuries because they had had to bear additional costs in order to comply with the requirement that they seek minority subcontractors. While not one of these affidavits concerned the provision dealing with the provision exempting minority general contractors who complete more than 50% of the work—suggesting that perhaps this provision has never had any impact on competition among general contractors in Hillsborough County and thus that any complaint based on the operation of that provision may have ripeness problems—we think that the attention paid to the other, primary provisions of the program may have prevented full development of the facts necessary to a standing determination on this point.

Consequently, we remand to the district court for reconsideration, in light of the *Northeastern Fla.* case, of whether the plaintiffs have in fact alleged any injury to their ability to compete stemming from the operation of the provision treating minority and nonminority contractors differently. In addressing this question, the district court should keep in mind the additional standing requirement that

a party seeking to invoke a federal court's jurisdiction must demonstrate ... "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."

*Northeastern Fla.,* — U.S. at —, 113 S.Ct. at 2302 (quoting *Lujan v. Defenders of Wildlife,* — U.S. —, —, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992)). While the complaint standing alone probably does not meet this standard, there may be additional information in the district court record which would support a finding that injury stemming from the operation of this provision has been alleged adequately.

Accordingly, we AFFIRM the district court's dismissal of those claims arising from provisions of the county's program which treat minority and nonminority general contractors alike, and REVERSE the district court's dismissal of those claims arising from the provision which treats minority and nonminority general contractors differently.